## The Town of Fishkill *vs.* The Fishkill and Beekman Plank Road Company.

A plank road company being about to construct a plank road from Fishkill to Beekman, entered into an agreement with the supervisor and commissioners of highways of the town of Fishkill, for the use of a certain highway in such town. By this agreement the supervisor and commissioners consented and agreed that the company should take and use forever the highway in question, or so much and such parts thereof as the company might require and should locate their road upon. As the consideration for this grant, the company agreed to keep said road, so occupied and taken by them, with all bridges across which their road should pass, in good and sufficient repair. In an action by the town against the company, for a breach of this agreement, in not repairing a bridge, the defense was that the highway and bridge in question had never been occupied and taken by the company for the use of their road, and therefore that they had never assumed their support. But it appearing that the company had taken possession and control of the highway and bridge in question, which were upon the direct route between one designated termination of the plank road and the other, and were a part of the highway which they had obtained the right to take; and that they had expended labor, laid down plank, and constructed their road upon and over them, in the same manner as they had done in respect to the residue of the road; *it was held* that these acts, in the absence of any explicit and legal declaration to the contrary, warranted the conclusion by the town officers, that the company meant to assume, and to use the bridge and that part of the road connecting with it.

*Held also*, that for all the purposes of the action, and of the contract, the company appropriated the highway as far as they constructed a plank track upon it, or assumed control of it.

*Held further*, that the town of Fishkill, in its corporate character, could not sue for a breach of the contract by the plank road company.

The inspection of a certain length of plank road, and the certificate of the inspectors, under § 34 of the plank road act, do not furnish conclusive, nor the best, evidence of the entire length of the road, and of the extent to which a highway has been appropriated.

Such inspection, and the certificate that it has been made, were not intended for any such purpose; but were designed only to ascertain the character of a road, after it has been completed, and whether it is a good and substantial road, in conformity with the law, so as to authorize the company to demand tolls for its use.

The compensation and damages for the use and occupation of a highway, by a plank road company, which the public officers are authorized by the statute to agree upon, need not be wholly estimated and paid in money. A part of the compensation may be in the shape of an executory agreement, by the company, to keep the road and bridges in repair.

Town of Fishkill *v.* Fishkill and Beekman Plank Road Co.

An agreement to that effect, made by the supervisor and commissioners of highways, is not void for an excess of authority by the town officers in making it, but is within the line of their duty and obligation.

An act of the legislature, entitled "An act to release the Fishkill and Beekman Plank Road Company from the construction of part of their road, and for other purposes," contained eight sections. The first released the company from its obligation to build and maintain a plank road any further than the portion of the road which had been inspected and certified. The second authorized an abandonment of any portion of the road, and the third regulated the terms and conditions, and the manner, of effecting such abandonment. The next three sections authorized the company to relay their road with gravel instead of plank, inflicted penalties for shunning the toll gates, although within three miles of each other. The seventh section legalized all the preliminary acts in the organization of the company, the subsequent acts of the company, and of various public officers, from time to time, in relation to it; and the eighth section was the usual enactment giving immediate effect to the whole statute. *Held,* that there was no constitutional objection to including all these provisions in one law, inasmuch as they all related to one general subject—the relief of the plank road company, by altering its fundamental articles, and modifying its obligations. But that the statute was in conflict with the spirit and intention, as well as with the letter of the sixteenth section of article three of the constitution, which requires that the subject of every private or local bill which may be passed by the legislature shall be expressed in the title.

The whole of the act, with the exception of the first section, was therefore declared to be unconstitutional and void.

The whole power and capacity of towns, as corporations, are derived from, and conferred by, statute. Their authority to contract or assume liabilities is restricted to cases where such action is necessary for the exercise of their appropriate functions as corporations; and their power to sue and be sued is limited to cases where the assertion of their corporate rights, or the enforcement of their corporate liabilities, require such proceedings.

As a corporation, a town has nothing to do with, and no interest in, the highways within its limits. The roads are not the property of the town, nor is the town responsible for their condition or their repair.

It has no rights nor responsibilities in respect to public highways, for which it can either sue or be sued.

The control and management of highways and bridges are vested in the officers of the town who are chosen for that purpose.

M R. DEAN, for the plaintiff.

Mr. *Thompson*, for the defendants.

EMOTT, J.   The defendants in this action are a corporation formed under the general act of May 7, 1847, authorizing the incorporation of companies for the construction of plank roads. The road which they purposed to build was to extend from the Hudson river at Fishkill Landing through the towns of Fishkill and East Fishkill, to a point in the town of Beekman, specified in their articles.   In July, 1851, they entered into an agreement with the supervisor and commissioners of highways of the town of Fishkill for the use of a certain highway in the town, according to the provisions of section 26 of the act of May 7, 1847.   It is upon this agreement, and its breach, that the present suit is brought.   By this contract, these public officers consented and agreed that the defendants should take and use forever " the public highway leading from Fishkill Landing at or near the Hudson River Rail Road bridge, through the Five Corners, Mattewan, Glenham village and Brinckerhoffsville, to the town line, or so much and such parts thereof as the company may require and shall locate their road upon."   As the " consideration for this grant, and compensation for the privileges conferred" thereby, the defendants agreed " to keep said road, so occupied and taken by them, with all bridges across which their road shall pass, *in good and sufficient repair according to law, without expense to the town of Fishkill.*"   The complaint in the present action, which is brought in the name of the town, pursuant to a resolution of a town meeting, alleges that the defendants neglect to repair the bridge across the Fishkill, near Brinckerhoff's mills and the easternmost portion of the road constructed upon this highway, and also its western termination ; that by the travel over and upon it this bridge has become worn and is in need of immediate repairs to the amount of $2000 ; that the plank upon the road have become worn, displaced and broken, so as to interfere with travel, and that the road also needs repairs to the amount of $2000 ; that the defendants claim to have abandoned these portions of their road, so that the charge of them has reverted to the public officers, and that the company are no longer liable for their repair, and therefore the defendants refuse to make any such repairs.   The judgment which the

plaintiffs claim is to have the contract between the defendants and the town officers annulled, and the defendants expelled from the highway, and forbidden to maintain gates or take toll, and also to have damages. The dispute between the parties, and the evidence taken at the trial, relate almost entirely to the easternmost portion of this road.. At the west end the road was constructed chiefly upon a route not occupying the public highway, and whether this portion of the read is properly maintained or has been legally abandoned, are questions in which neither the town in its corporate capacity nor the commissioners of highways have any interest, and which cannot be examined in this suit.

The first defense made by the company is, that the portion of the highway and the bridge about which these allegations are now made—that is, so much of the highway as lies easterly of a point opposite a tenant house of Mr. Brinckerhoff, and just west of the causeway leading to the bridge, which has been mentioned, and with it this bridge in question—have never been occupied and taken by them for the use of their road, and therefore they have never assumed their support. The grant and agreement by the town officers is expressed to be made upon condition that the company should, within thirty days, make and file the map required by law, indicating the location of their road and every portion of the highway required and taken by them. This condition has not been complied with. No map has been filed in the office of the county clerk, nor any survey of the location of this road upon the public highway recorded. The present suit, however, is not brought for the breach of this condition, nor is the failure to comply with this part of the agreement alleged as any part of the cause of action. But this map and survey would have furnished explicit evidence of the extent and limits of the intended appropriation of the highway, and the action of the defendants under this agreement, if they meant to limit it. This evidence it was in the power of the defendants to have furnished, and therefore their own acts, in placing plank and other structures upon the portion of the road in dispute, must be taken more strongly against them. Whatever pre-

sumptions would arise from such conduct it was in their power to rebut, and as they have failed to do so, these inferences must be left to have their natural and proper force and effect. It is not denied that the defendants altered and repaired this bridge, and the causeway leading to it, and two culverts over which the causeway passes, and continued their plank track over this portion of the road, with these structures, and to the eastward of the creek. It is said by the counsel for the defendants that this was done by way of constructing a feeder to their road, as they might improve any cross roads on the route, or roads leading to either terminus. But it must be remembered that this point was not the terminus of the road designated by their articles or by this agreement, but that the bridge and piece of road in question are upon the direct route between one designated termination of this plank road and the other, and are a part of the highway for the use and occupation of which they had agreed, or which they had obtained the right to take. When, therefore, they took possession and assumed control of this piece of highway and this bridge, expended labor, laid down plank, and constructed their road upon and over them, in the same manner, in all respects, as they had been doing with the residue of this same road before they reached that point, these public officers had a right to conclude, in the absence of any explicit and legal declaration to the contrary, that the defendants meant to assume and to use this with the residue, and it is too late now for them easily to controvert this conclusion.

It is contended by the defendants, that the inspection of a certain length of their road, extending from the landing to the point opposite the tenant house of Mr. Brinckerhoff, of which I have spoken, and the certificate of the inspectors, under section 34 of the plank road act, furnish the best, if not conclusive, evidence of the entire length of the road, and of the extent of the appropriation of this highway. I do not however understand that this inspection, or the certificate that it has been made, is intended for any such purpose. Its object is only to ascertain the character of a road after it has not only been located, but built and fully completed, and whether it is a good and sub-

stantial road, in conformity with the law, so as to authorize the company to demand tolls for its use. Suppose, after building five miles of their road, which is the shortest distance which the inspectors are permitted to examine and certify, or after building the seven and a half miles included in the present certificate, this company had gone on with their road upon this same highway for one, two or three miles farther, and then stopped without reaching their terminus, there would not seem to be any authority in the statute for a separate inspection of this extension. And yet it would hardly do to say that it was not a portion of the plank road, or that the highway on which it was built had not been taken by the company. If indeed a company see fit to neglect a provision which is intended for their benefit, as well as for that of the public, or if they choose to construct a portion of their road in such a manner that it shall not be fit for inspection, or even to waive the right to take tolls upon such a part of their road, temporarily or otherwise, neither the company nor the public should be prejudiced or affected in any question arising upon the location of the road by any such act or neglect. I shall hold, that for all the purposes of this case, and of this contract, the defendants appropriated this highway as far as they constructed a plank track upon it, or assumed control of it, which I understand, from the evidence, to have been to a point across and on the east side of the creek at Brinckerhoff's mills.

It was urged upon the argument, that the "compensation and damages" for the use and occupation of a highway by a plank road company, which the public officers are authorized by the statute to agree upon, must be wholly estimated and paid in money, and that they have no right to make such an executory agreement as this a part of this compensation. If this position were well taken, the consequences might be at least as fatal to the defense as to the prosecution of this suit. If the commissioners and supervisor have exceeded their authority in making this agreement, the whole proceeding was void, and the company acquired no rights to the highway in dispute. That is the consequence of an unauthorized or illegal attempt to introduce

terms and conditions by rail road appraisers in an assessment of damages. In *Hill* v. *The Mohawk and Hudson R. R. Co.* the supreme court, on certiorari, set aside an appraisal of damages for this reason, and vacated the whole proceedings, and their decision was affirmed, on appeal, by the court of appeals. (3 *Selden*, 152.) The supervisor and commissioners, however, do not occupy the same position as appraisers, nor are their powers restricted within the same limits, as those of the jury authorized by the plank road act to assess the damages when the public officers and the company do not agree. These officers cannot be considered as arbitrators between the company and the owners of land. The privileges which they are authorized to confer are to affect the rights of the public, and they, as the representatives of the public for this purpose, are clothed with authority to do and agree to terms and conditions, for the interests of which they are guardians.

The ground upon which such an appropriation and apparently exclusive use of highways by road companies, have been justified against the owners of the soil over which the highway passes, as well as others, has been that these plank roads still continued to be public highways, and that only the method of maintaining them was changed, and the control vested in the corporation, and the tolls were collected in lieu of a highway tax. (*See Benedict* v. *Goit*, 3 *Barb. S. C. Rep.* 459.) Thus the company became the agents of the commissioners and the public, to oversee, repair and support the road. Such an agreement as the one before me is therefore precisely within the line of their duty and obligation. Whether it creates any new liabilities, and when and in what event a right of action accrues to any party, upon it, are questions which I shall examine in another part of this case. It is sufficient at present to say that this agreement is not void for an excess of authority by the town officers in making it.

The defense which was most strenuously insisted upon at the trial is, that the company have abandoned certain portions of their road, including the strip of highway in question, under authority conferred by and in accordance with the provisions of a special act of the legislature, passed April 15, 1854; and that

Town of Fishkill *v.* Fishkill and Beekman Plank Road Co.

their liability has therefore terminated, and the charge and control of this highway has reverted to the commissioners and overseers of highways in the town. Of course this will furnish a complete answer to any such action as the present, if there be no valid objection to this statute, or the proceedings taken in pursuance of its provisions. But the plaintiffs contend that this statute is in conflict with section 16 of article 3 of the constitution of the state, which declares that "no private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title." The object of thus incorporating a rule of legislation into the fundamental law of the state seems to have been twofold. One object undoubtedly must have been to prevent corrupt combinations, by which the supporters of one project might secure the assistance of the friends of a totally distinct object by combining the two in one bill, and thus obtaining a vote for the compound, which neither measure could receive alone. But there was another mischief which it was supposed this provision would remedy. This was misleading the legislature or the people by the title of the law, or concealing the truth as to its nature and extent. In other words, it was intended not only that each law should be confined to one subject, but also that the title of every act should indicate fully and truly its design and extent. It is not contended that this law embraces more than one subject ; the question is whether that subject is expressed in its title. The act consists of eight sections. The first releases the company from its obligation under its articles to build and maintain a plank road any farther than the portion of the road which has been inspected and certified according to law. The second section authorizes such an abandonment of any portion of the road already constructed, as the defendants have made of the piece of road in question here, and the next section regulates the terms and conditions and the manner of effecting such abandonment. These two sections are the foundation of the defense now under consideration. The next three sections authorize the company to relay their road with gravel instead of plank, inflict penalties for shunning the toll gates, and authorize three toll gates on the

road, although within three miles of each other. Then follows a section legalizing all the preliminary acts in the organization of the company, the subsequent acts of the company, and of various public officers from time to time in relation to it, and the last section is the usual enactment giving immediate effect to the whole statute. Obviously, upon any reasonable construction of the constitution, there can be no objection to including all these provisions in one law. They all relate to one general subject—the relief of this plank road company, by altering its fundamental articles and modifying its obligations, or in other words, by conferring additional privileges and authorizing the termination of existing liabilities. But the difficulty with the act is that this subject is not expressed in its title. The title is, "An act to release the Fishkill and Beekman Plank Road Company from the construction of part of their road, and for other purposes." These latter words "for other purposes" must be laid out of consideration. They express nothing, and amount to nothing, as a compliance with this constitutional requirement. Nothing which the act could not embrace without them can be brought in by their aid. The subject of the first section is fairly expressed in the title. That section relates exclusively to the release of the company from the obligations which they assumed at their organization, to complete a road from Fishkill to Beekman. It was indeed suggested that the words "construct or maintain," which are used in this section, will give to it a scope and effect equivalent to what is contemplated by the residue of the act. In other words, it is said that as the word "construct" refers to the road which the company have not yet constructed or commenced, the word "maintain" should be construed to relate to what the company have built; and thus this section, by releasing the defendants from the obligation to maintain what they have already constructed beyond a certain point, accomplishes at once all which the remaining sections were intended to effect, and justifies this abandonment of a part of the road. If this were so, the first section would be liable to the same constitutional objection which applies to the rest of the statute. But the whole law must be considered together, and

Town of Fishkill *v.* Fishkill and Beekman Plank Road Co.

a fair construction of the whole or even of the language of this portion is sufficient, I think, to satisfy us that the word "maintain" relates to the subsequent support of what the defendants have yet to build to comply with their articles, and which the act intends to relieve them from building, and can have no other effect than to make the language broader and stronger, with reference to the existing duties and obligations of the company, in the further prosecution and continuance of their road.

Taking this view of the first section, I see no reason to doubt that so much of the law is unexceptionable and valid. It can hardly, however, be said that "to release the Fishkill and Beekman Plank Road Company from the construction of part of their road," expresses fairly the complex subject of the whole act, including as it does various provisions respecting the company, its privileges and its obligations, some of which have no relation whatever to the construction of any portion of the road. No one would be informed or led to suspect, by the restricted title of this act, that it contained sections conferring upon this corporation some peculiar and extraordinary privileges, or that it was designed to discharge the defendants from liability for their past acts and engagements, and not merely to relieve them from incurring further expenditures and responsibilities in future. It would seem, therefore, that such a statute is in conflict with the spirit and intention, as well as with the letter, of the constitution in this respect. For these reasons, I find myself, with some hesitation and reluctance, constrained to declare the whole of this act, except the first section, unconstitutional and void. The responsibility of pronouncing an act of the legislative power null and void, is one which no court or judge should rashly or readily assume. In this case the application of this provision of the constitution is somewhat technical, and the construction of the fundamental law which I have adopted is, I admit, rigid and precise. But such is the only construction which can give to such a clause any practical effect. The questions which are to arise upon it must resolve themselves into questions of the meaning and construction of words; and such questions must be determined with precision, to be determined with correctness.

All the proceedings of the defendants under this law, there-fore, to abandon portions of their road and to discharge them-selves thereby from a part of their engagements and liabilities, are utterly null and fruitless. The contract between them and the supervisor and commissioners of Fishkill remains in full force as to all its subject matter, and all its obligations are still upon the defendants. It is alleged in the complaint, and substantially admitted by the defense, that since the attempted abandonment pursuant to the provisions of the act which I have been consider-ing, by filing notice of an intention to relinquish certain portions of this road, these portions have become more or less in need of repairs, and the defendants have neglected and refused to repair them, not considering themselves any longer under obligations to do so. This formal abandonment, with the consequent refusal to continue the charge and support of such portions of the road, are set up as causes for the interposition of the court to annul the contract and to remove the plank and toll gates from the high-way as unlawful obstructions. I shall at present waive the question whether such an action could be maintained in the name of the town, because I am satisfied that no such conse-quences can follow from the premises, and no such interposition can be invoked. Whether the defendants' toll gates are legally placed, and lawful tolls exacted, are questions not put in issue in this action. But the neglect to repair a portion of their road, with the consequences which are alleged, more prospective it may be observed than past, is at most but a partial breach of this agreement. It is unquestionably a violation of duty, ex-posing the delinquents to all the penalties and consequences of such an act. But it is neither by law nor by the agreement of the defendants a forfeiture of their road or their privileges and franchises. I do not see that the rights or the relations of these parties to each other, or of the defendants to the public, are substantially altered by the attempt of the company to do some-thing which they cannot do, or their declaration of an intention no longer to be bound by their agreement, or to discharge their duty. All these questions must be considered and determined as if no statute had been passed and there were nothing in the

case but the contract of July 15, 1851, by which to measure the rights of the parties.

All that remains, then, is the question of a recovery by the town of Fishkill of damages for a breach of this agreement.

I think it admits of great doubt whether such an agreement imposes any new obligations upon a company who take possession as well as charge of a highway under its provisions. Whether any action can be maintained for an omission to repair a part of the road, or a failure to keep it in perfect order, without averring or showing some loss or damage resulting to some party from such omission, beyond the mere inconvenience to the public or to travelers from an unsatisfactory road; whether, in fine, such an agreement can be construed as any thing more than an indemnity to the public and the public officers against any loss or expenditures incurred or cast upon them when they have resumed control of the road, or sooner, if any liability can be made to attach to them, in consequence of the failure of the defendants to do their duty and keep this road in good order as a public highway. Whatever may be the decision of these questions, however, I can see no principle upon which any such claim for damages can be asserted, or any such action as the present maintained, by the town of Fishkill.

Towns in this state come into courts of justice, sue and are sued as corporations. They are vested with corporate capacity for certain specific purposes. (1 *R. S.* 337.) Their whole power and capacity as corporations are derived from and conferred by statute, and these powers are specified and confined to certain functions only. Their authority to contract or assume liabilities is restricted to cases where such action is necessary for the exercise of their appropriate functions as corporations, and their power to sue and be sued must be limited, as it is well stated by Judge Denio, in *Lorillard* v. *The Town of Monroe,* (1 *Kern.* 392,) to cases where the assertion of their corporate rights, or the enforcement of their corporate liabilities, require such proceedings. Now as a corporation a town has nothing to do with, and no interest in, the highways within its limits. The title to the soil of the highways is in individuals. The right to

their use belongs to the inhabitants of the town, not exclusively, but in common with the whole public. The officers who are to control and manage the highways are indeed chosen by the town as a political division, or in its various road districts; but there the power as well as the interest of the towns, as such, completely ceases, and these officers themselves are made a *quasi* corporation for the care and superintendence of highways and bridges. The roads are not the property of the town, nor is the town responsible for their condition or their repair. The lucid opinion of Mr. Justice Selden, in *Morey* v. *The Town of New-fane*, (8 *Barb.* 645,) fully enunciates and discusses this principle, and sustains it by a reference to the cases; and I am not aware that it has ever been denied or overruled, in its application to the towns in our rural counties. And as the town, as such, in its corporate character, has no rights nor responsibilities in respect to public highways for which it can either sue or be sued, so the defendants here are not its agents, or employed by it, in any sense. This agreement was not made with the town, nor was it, as we have seen, to protect the property or the rights, or to save the liabilities, of the town. It could only be as representing the public, whose rights are infringed or whose interests are affected, that the town could interpose in such a case, and that is a capacity in which no authority to appear or act, or sue or defend, is conferred on a town as such by the statute. The interests of the public in respect to highways are committed to the commissioners and overseers, and they are independent public officers chosen, as I have said, in towns as political divisions, but having no concern with towns as corporate bodies. If a recovery could be had upon this agreement by a rule of damages that would give the plaintiffs the amount necessary to put the road in order wherever it is out of repair, of what avail would that be to the interests of the community at large who travel the road, and whose protection would be the only object in permitting such a suit? Or how, after the amount recovered in such an action had been paid into the town treasury, could it be made available to restore the road to usefulness? Where is the right or the power to control its application, or direct its use,

Newell *v.* Salmons.

by the town, for such a purpose. In short, the town of Fishkill is not here to protect its corporate property, to assert its corporate rights, or to shield itself from any corporate liabilities. No ground is shown to maintain the present suit, and there must be judgment for the defendants with costs.

This is a case in many respects of the first impression, as far as I am aware, and it involves some principles of very considerable importance. I have therefore bestowed upon all the principal questions a careful examination and discussion. The case might perhaps have been decided without examining all the points which have been presented. But I think the parties are entitled to have the decision of the court upon all the issues fairly involved in the case, and to have that decision distinctly made.

[Dutchess Special Term, September 8, 1856. *Emott,* Justice.]