# SUPREME COURT.

## In the Matter of Frederick D. Tappen, to Vacate Certain Assessments.

The common council of the city of New York are authorized to assess the *costs of local improvements*, upon the property benefited thereby.

The charge for *making assessments, it seems,* is not illegal, although made by the *assessors,* who are salaried officers; especially where it does not appear that any greater sum is charged than the actual expense to the city in making the assessment.

It is well settled by this court that an assessment will not be set aside because the charge for assessing is contained in it.

By chapter 308 of the laws of 1861 a *Board of Revision* was created whose duty it is made to confirm assessments. Therefore, such assessments need not be confirmed by the common council.

This law of 1861 creating the Board of Revision, is not void as infringing the constitution of the state. The subject of the act is expressed sufficiently in its title. It is an act relative to *contract.*

Where the names of the *owners and ocupants* are the same in the assessment as upon previous years tax-list, it is all the law requires, in reference to the naming of the owners and occupants of lots affected by the assessment.

The common council has the power, by ordinance, to direct the *filling of sunken lots,* and in case it deems necessary to do the same at the expense of the owner forthwith upon the passage of the same.

It is the duty of the common council to assess the *cost of the improvement* upon the property benefited, and not cast this burden upon the tax-payers at large.

*New York General Term, January,* 1869.

*Before* Barnard, Sutherland *and* Ingraham, *Justices.*

This is an application to vacate the assessments mentioned and described in the petition herein.

The objections to the assessments are as follows:

*First.*—It is objected to all the assessments that they include a charge for assessing.

The gross amount charged for assessing is seven hundred and five dollars and seventy-five cents ($705.75).

*Second.*—It is objected to all the assessments that they have never been confirmed by the common council.

*Third.*—It is objected to all the assessments that they do not state the name of the owner or owners, occupant and occupants of the property assessed.

*Fourth.*—It is specially objected to assessments numbered two and three (Nos. 2 and 3), in the petition and proofs, that they are irregular, for the reason that there is no authority to lay an assessment for filling sunken lots, and also for the reason that the ordinance should require the owner to fill the lots before the work is done by the city.

*Fifth.*—It is specially objeccted to assessment numbered six (No. 6), in the petition and proofs, that it is irregular, for the reason that the ordinance requires the work to be done *where necessary.*

*Sixth.*—It is specially objected to assessment numbered seven (No. 7), in the petition and the proofs, that the whole cost of the work is assessed upon the property owners, whereas the ordinance requires that only one half of the expense of the work should be borne by the property owners.

His Hon. Justice CARDOZO, at special term, denied the prayer of the petitioner, whereupon he appealed to the general term.

CHARLES E. MILLER, *counsel for petitioner and appellant.*

I. The objection to the charge of assessing is well taken. (*Tappan case; Lewis case; Wood case, opinion,* INGRAAAM, J.; *Beekman's case,* 19 *Abb.,* 244.)

(*a*). Under the act of 1851, the assessors were to receive such compensation as the common council might determine not exceeding one per cent upon the amount of the assessment. (*Laws* 1851, *Chap,* 436, *p.* 813, *sec* 1.)

This act, however, did not authorize the assessors to include the amount of their compensation in their assessment.

In 1853 an act was passed, fixing the amount of the compensation of the assessors at two per cent. upon the amount of the assessment, and authorizing them to include that amount in the assessment. (*Laws* 1853, *chap* 508, *p.* 972, *sec.* 2.)

The act of 1853 continued in force until 1859, when it was provided that the compensation of the assessors should be two thousand dollars each, to be paid by the comptroller out of the city treasury, and which should be in lieu of all compensation. (*Laws* 1859, *chap.* 802, *p.* 683, *sec.* 16.)

It certainly cannot require argument to establish that, after the passage of the act of 1859 there was no authority for the assessors to include in the assessment the charge of two per cent. The act of 1853 gives the two per cent. to the assessors. There was never any authority to include the two per cent. in the assessment except for the benefit of the assessors.

The two per cent. was the assessor's fees, and when the act of 1859 gave the assessors an annual salary of two thousand dollars, payable out of the city treasury, and declared that it should be in lieu of all other compensation, it was a virtual and direct repeal of the act of 1853, authorizing the charge of two per cent.

This court has decided that it was competent for the common council to distribute a portion of the expense of assessment proceedings upon the city at large. (*Turfler's case*, 19 *Abb.*, 140 ; *opinion* INGRAHAM, J.

Surely, then, it was competent for the legislature to direct that the cost of assessing should be a general charge, instead of a special one, as was done by the act of 1859.

The argument in support of the charge is, that it is intended to reimburse the city for the salaries of the assessors.

In Tappen's case, Mr. Justice INGRAHAM, in considering the legality of the charge for assessing, says:

"I think there can be no doubt of the impropriety of making such a charge."

"Since the change was made, any charge therefor is improper, and should not be made."

He refused, however, to grant the application, on the ground of laches, the assessments being from 10 to 15 years

Matter of Frederick D. Tappen.

old. In this case they are recent ones, and that reasoning does not apply, even if it be good, which is respectfully doubted.

Again in Lewis' case, at general term, the same learned justice uses the following language :

" The assessors should not have included any charge for making the assessment. The allowance of two per cent. is no longer a legal charge."

The board should not include such a charge, " and if persisted in, the court will feel bound to grant relief from it in cases hereafter brought before it."

This is a promise of future justice, in a case in which the court refused to render justice to the applicant, merely because he is the first one to ask it.

The illegality, therefore, of the charge for assessing has been declared, both at special and general term of the court.

The maxim, " de minimis non curat lex," has no application to this case.

This is a statutory proceeding. The statute makes it the imperative duty of the court to vacate an assessment, when irregularity or fraud it established.

The irregularity of the charge for assessing has been again and again affirmed by the court, and having been thus affirmed, it is the plain statutory duty of the court to vacate every assessment which contains the illegal charge.

It is not a question of amount, but a naked question of power.

The assessors have done that which they had no power to do, and their assessment is consequently invalid.

If the assessors had possessed the power to charge any sum for assessing, perhaps the maxium might be invoked to protect the assessment from the consequences of a slight excess in the amount charged.

In this case it is conceded, both by counsel and court, that the assessors had no power to charge anything for asses-

sing, there is, therefore, not the slightest room. for the maxim, "*de minimis non curat lex*," since the question is not one of amount but of power.

The correctness of this position can be best illustrated as follows:

Suppose the lots upon which this illegal charge for assessing is imposed should he sold for the non-payment of the assessment, is it not clear that the purchaser would not get any title which he could enforce? The illegal charge would vitiate the whole proceeding, and the owner could successfully prosecute his action of ejectment, should the purchaser get possesion under the sale. (*Blackwell on tax, Titles, p.* 160-162, *and cases cited; Huse* agt. *Herriman,* 2 *Greenleaf,* 375.)

This last case is much stronger than the one at bar.

In that case the illegal charge was only eighty-seven cents, (87 cts.) while in these assessments the illegal charge exceeds seven hundred dollars.

In that case, as in this, there was an attempt to save the proceedings by the maxim, "*de minimis non curat lex*," but the court repudiated it in the following terms:

MULLEN, C. J.—It is contended that the sum of eighty-seven cents, over and above the sum of five per cent. is such a trifle as to fall within the range of the maxim, "*de minimis,* etc.," but if not, still the small excess does not vitiate the assessment. The maxim is so vague in itself as to form a very uncertain ground of proceeding or judging, and it may be almost as difficult to apply it, as a rule in pecuniary concerns, as to the interest which a witness has in the event of a cause; and in such case it cannot apply. Any interest excludes him.

"The assessment was therefore unauthorized and void. "If the line which the legislature has established be once "passed, we know of no boundary to the discretion of the assessors."

There can be no answer to the authority of this case in its application to the one at bar.

In the case cited the assessors had jurisdiction to assess overlayings to the extent of five per cent.

In the case at bar the assessors had no jurisdiction or power to include any amount for assessing. It being thus illegal, the petitioner would have a perfect remedy in case there was an attempt made to enforce the collection of the assessment by sale or otherwise. There is, therefore, neither reason nor justice in denying him the relief now which he must certainly secure in case of sale of his property under the assessment.

Indeed, the purpose and object of the act of 1858, under which this proceeding is instituted, was to furnish a prompt and speedy remedy against illegal assessments, and to relieve parties aggrieved from the necessity of submitting to a sale, and the consequent delay and vexation of an action of ejectment.

The additional fact appears in the case that the amount charged by the assessors is double the actual expense. Conceding that the assessors could charge the actual expense, still they have no power, under the most liberal construction, to double that charge. It appears that this was not an unintentional error on their part, but made on a fixed basis, without any data upon which to base it.

The court having adjudged the charge illegal, and the assessment invalid, the petitioner is entitled to his statutory right, and the assessment should be vacated.

II. The objection that the assessments have never been confirmed by the common council is well taken.

(a). It is admitted, as a matter of fact by the opposing counsel,

That the assessments in question have not been confirmed by the common council, but it is insisted by him that since the act of 1861, constituting the comptroller, counsel to the corporation, and recorder, a board of revision and correc-

Matter of Frederick D. Tappen.

tion of assessment lists, there is no necessity for any action by the common council.

Counsel for the petitioner contends that the act conferring the power of confirmation upon the board of revision is un-constitutional.

Prior to the act of 1861, the power of confirmation of assessments was vested in the common council. (*Valentine's Laws*, *p.* 1190, § 175.)

By the act of 1861 this power of confirmation of assessments was transferred to the board of revision and correction of assessments. (*Laws* 1861, *chap.* 308 *p.* 702 § 1.)

This act is entitled " An Act relative to Contracts, by the Mayor, Aldermen and Commonalty of the City of New York."

Now, the constitution provides : " No private or local bill which may be passed by the legislature shall contain more than one subject, and that shall be expressed in its title." (*Const.*, *art.* 3, § 16.)

The act of 1861 is a local bill, since it applies only to the City of New York. It embraces more than one subject, viz., contracts, and the establishment of a board of revision and correction of assessments. Subjects entirely dissimilar, and having no positive connection.

Again, there is not a suggestion in the title of the act of the establishment of a board of revision, etc.

In this respect, also, the act is unconstitutional, since the requirement is that the subject of the act must be expressed in its title. A more plain and palpable violation of the constitutional provision in question could not well be imagined.

The courts have again and again interfered to protect parties and the public from legislation in violation of this constitutional provision.

The following are some of the instances in which such protection has been extended : (*Town of Fishkill* vs. *Plank*

*Road Company,* 22 *Barb.,* 634; *People* vs. *Jaycox, Court of Appeals.* PECKHAM, *J.; People* agt. *Hills,* 35 *N. Y.,* 449.

A like interposition is asked from the court in the case at bar.

III. The objection that the assessment does not state the names of the owners of the lots assessed is well taken.

(*a.*) The statute provides: "In all cases when commissioners or assessors shall describe the houses and lots assessed for any improvement, the assessment shall describe and particularize all such houses and lots by the known street number as well as the ward number, and shall also state the name of the owner or owners, and occupant and occupants; and it shall be the duty of the surveyors who shall make out the assessment list to ascertain, by inquiry, to be made of the collector of taxes of the ward in which the property assessed is situate, and by inquiry of the person who collected the taxes of such ward the previous year, as to such ownership, and such collector shall afford the requisite information." (*Laws of* 1840, *chap.* 826, § 1; *Valentine's Laws, p.* 1243, § 1.)

It thus appears that the statute is imperative in its requirements that the assessment list should state the names of the owner or owners, and occupant and occupants of the property assessed. In the case at bar it appears by the proofs that the provisions of the statute have not been regarded.

In assessment numbered 2 and 3, in the petition and proofs, the lots are assessed to "owners unknown, estate of George Rapelyea."

In the assessment number 4, in petition and proofs, all the lots are assessed to estate of George Rapelyea, "except ward numbers 5167, 5168, which are assessed to Post."

In assessment number 5, in petition and proofs, all the lots are assessed to the "heirs of Geo. Rapelyea."

In assessment numbered 6 and 7, in the petition and proofs, all the lots are assessed to the "estate of George

Rapelyea," except ward numbers 5167 and 5168, which are assessed to Myers, and ward number 5170, which is assessed to Henry Mullen.

In assessment numbered 8, in petition and proofs, the lot, ward number 478, is assessed to "Patrick McGuire."

In assessment numberd 9, in petition and proofs, all the lots are assessed to the "estate of George Rapelyea."

In assessment numberd 10, in the ·petition and proofs, none of the lots are assessed to the real owners.

In assessment numbered 11, the lots are assessed to the "estate of George Rapelyea," and to other persons not owners.

The same is true· of assessment numbered 12, in petition and proofs.

It thus appears that in no case has the provision of the statute above quoted been regarded.

It•has been judicially determined that the ommission by the assessors to comply with the requirements of the statute, with respect to the naming of the owners and occupants of lots affected by the assessment, invalidates the entire proceedings. (*Whitney* agt. *Thomas,* 23 *N. Y. R., p.* 281 ; *Platt* agt. *Stewart,* 8 *Barb.* 493 ; *Paillet* agt. *Youngs,* 4 *Sandf.,* 50.)

In the case of *Whitney* agt. *Thomas,* SELDEN, J., p. 285, cites the statutory provision in relation to assessment of taxes, and says : "These sections require that if the owner resides in the town or ward the lands shall be assessed to him, unless they are actually occupied by another, and then they may be assessed either to the owner or occupant. If the owner does not reside in the town or ward, they must be assessed as non-resident lands. The provisions are imperative. There is no authority whatever for making the assessment otherwise than as they direct."

The only distinction between this case and the one at bar is, that under the act of 1840, the assessors are required, in

all cases, to give the names of the owners and occupants of the lots affected by the assessment.

In the case of *Platt* agt. *Stewart* (*supra*), the assessment was imposed upon the " estate of Garrison Stewart."

EDMONDS, J.. p. 500, says :

" The ssessment upon the estate of Garrison Stewart was " also illegal. The statute requires the assessment to be " upon the owners or occupants of the houses and lots intend- " ed to be benefited."

" And for such an improvement as laying curb and gut- " ter stones there is no authority for making any other as- " sessments. In an assessment for opening streets, there is " a different provision. " There if the owners or parties " interested, or their respective estates and interests are un- " known, or not fully known. it will be sufficient for the re- " port to set forth generally, the sums assessed and the par- " ties interested, without specifying the names or the estates, " or interests of the owners or parties interested, or any of " them. But, I repeat, in assessments for paving there is " no such provision. On the other hand, the statute is ex- " press in requiring the assessment to be upon the ' owner " or occupant,' and I know of no authority that the com- " mon council or their assessors have to depart from this " plain requirement of the statute."

" The departure in this case is very palpable. Although " the assessment may be against either owner or occupant, " the common council cannot have recourse for the collection " of the assessment to a sale of the premises, in the manner " in which these premises were sold, unless payment of the " amount be first demanded of the owner (not the occupant), " or unless such owner cannot, on diligent inquiry, be found " in the city. Now, this assessment is not returned as one " where the owner cannot be found in the city, but is re- " turned as one where the collector has been demanding it " of the owner of the land mentioned in the assessment. " What owner, in this case, was the demand made upon. The

Matter of Frederick D. Tappen.

" only owner mentioned in the assessment, was the estate
" of Garrison Stewart—which part of his estate—the real or
" personal—and of what persons? Of the widow, as occu-
"punt an tenant in dower? of the children as heirs at law?
" or of the personal representatives of the deceased? All
" this is left in doubt in this case, and may properly be so
" left, if this mode of assessment can be tolerated; and then
" of what use would be the enactment which requires two
" demands of the owner before recourse can be had to the
" remedy, by sale of the premises sought to be charged?"

" But it is unnecessary to pursue the argument. It is
" enough, in such cases, that the statute must be strictly fol-
" lowed in order to warrant the imposition of such a tax,
" and that in this case there has been a departure from it."

The illegality of the assessment, therefore, is not stating
the names of the owners of the lots in question, beyond
dispute.

In the majority of instances the assessments are in the
same words passed upon by Judge EDMONDS' decision, viz:
" the estate of George Rapelyea,"

No construction can make that a compliance with the
statute, even if the assessors had made all the inquiry which
the statute prescribes.

It is claimed that the statute is complied with by insert-
ing the names that appeared on the tax list of the previous
year; it is answered that the statute requires inquiry at the
time of the ward collector of taxes, in addition to inquiry
of the person who collected the taxes for the previous year.
No such inquiry is shown.

In *Paillet* agt. *Youngs*, (*surpa*) p. 57, MASON, J., says:

" It is no answer to say that, at such a distance of time, it
" is impossible to prove the fact. The difficulty in making
" proof will not repeal the law. The legislature might have
" said, in express terms, that the person who last paid taxes,
" or who was last assessed for taxes, shall be deemed to be
" the true owner, and then the mode of proof would be sim-

"ple. But they have not said so, and have referred the as-
"sessor to the information to be derived from personal in-
quiry of the ward collector. And where the real owner
"is not named in the assessment, we cannot presume, with-
" out proof that the proper inquiry was made. The assess-
" ment, for this reason, is, we think, invalid."

IV. The objections to assessments numbered 2 and 3, as
to the irregularity of the assessments for filling sunken lots,
are well taken.

(a). The authority for filling sunken lots is derived from
second section of chapter sixty-nine of the laws of 1834
(*Valentine's Laws*, p. 469.)

That section is as follows :

" That it shall and may be lawful for the mayor, etc., etc.,
in all cases where they may deem it necessary for the more
speedy execution of any by-law or ordinance requiring the
owners, agents, occupants, etc., of any lot or lots to fill up
or raise such lot or lots, forthwith upon the passage of such
by-law or ordinance, or at any time thereafter, when they
may deem it expedient to cause such lot or lots to be filled
up at their own expense on account of such owners, etc.,
respectively, and the said mayor, etc., are hereby authorized
to levy reasonable costs, etc., by distress and sale of the
goods and chattels of such owners, against, lessees or occu-
pants, or to recover the amount of such expense by action
of debt in any court of record, from the persons, respective-
ly, on whose account the same shall have been incurred,
their respective heirs, executors, and administrators ; * * *
and further, that the amount of moneys which the said mayor,
etc., shall have advanced for the above purposes, with law-
ful interest on the same, shall be deemed a lien on such lot
or lots, and that such lot or lots may be sold therefor, ac-
cording to the provisions of the said act, for the more effec-
tual collection of taxes and assessments in the city of New
York, or any act amendatory thereof, in the same manner

as if the said amount and interest had been charged on the said lot or lots by virtue of an assessment."

The provisions are very peculiar, and differ widely from every act authorizing assessments for local improvements. The power of doing the work was only conferred upon the corporation in certain specified cases, i. e., when an ordinance shall have passed requiring the owners to do it, and the corporation shall deem it necessary, for the more speedy execution of such ordinance, to do the work themselves, at their own expense. All other local improvements are to be performed by the corporation, at the expense of the owners benefited, and jurisdiction to perform the work and to assess therefor is acquired by the passage of the ordinance directing the work.

The provision for its collection are distinct from all other cases.

It may be levied upon the personal property, or recovered by action of debt in a court of record—and until paid it is a lien, and may be collected in the same manner as if it had been charged upon the lot by an assessment.

This last provision clearly shows that it is not an assessment, and naturally enough, since there is nothing to assess. Each lot is filled by itself, and pays for its own filling.

Now, what course has the corporation adopted, in the assessment under consideration? Simply this:

Ordinances were passed directing the filling of the lots by the street commissioner, and authorizing an assessment of the expense upon the property benefited.

Not one word in any of these ordinances requiring the owners to do it, and it will be noted that until such requisition is passed that there is no jurisdiction in the corporation to do the work at all. It is only made lawful for them to do the work in cases where they deem it necessary for the more speedy execution of the ordinance requiring the owners to do it themselves.

The only object of filling, is to guard against diseases or injury to health.

Now, if this were an assessment, it would be included in the provision that not more than one half the last assessed value shall be assessed on the lot. (*Valentine's Laws, p.* 1244, § 7.)

This limitation would prevent the corporation from taking any steps to guard against infection, etc.

Should it be urged that the work is done under § 175, chap. 86, of laws of 1813, it is answered that such is not the fact.

That section refers to raising or reducing lots, not to filling them, and applies only to cases where the grade is changed.

Sunken lots are in terms referred to, and governed by sections 287, 288, and 289, of the same act, which in their terms are amended by the act of 1824. They are only a continuation and modification of the laws of 1803, chap. 70, § 1 to 6, Davies' laws, p 414. See preamble.

V. The objection to assessment number 6, in the petition and proofs, is well taken.

(*a*.) The objection is, that ordinance requires the work to be done "where necessary," leaving it to the discretion of the street commissioner, to determine the amount of work to be done.

In Brown's case a similar objection was made and sustained as valid.

SUTHERLAND, J., says:

"I think the common council have no power to pass an ordinance directing sidewalks to be re-flagged when necessary. The ordinance should direct or specify what work is to be done, for when it provides for its being done, or to the contingency of its being necessary, it leaves a discretion somewhere to be exercised by some person."

VI. The objection to assessment numbered 7, in the petition and proofs, that the entire expense of the work was

Matter of Frederick D. Tappen.

assessed upon the property owners, although the ordinance required that one half the expense should be paid by the city, is well taken. (*Turfler's case*, 19 *Abb.* 140.)

(*a.*) In the case above cited, this same objection was taken to an assessment for paving Eighth avenue, from Hudson street to Forty-second street, and was sustained as valid, and the assessment vacated by the unanimous opinion of the general term of the supreme court.

VII. The order of the court below should be reversed, and the prayer of the petition granted.

RICHARD O'GORMAN, *counsel to the corporation.*

I. The order is not appealable. (*Dodd's case*, *N. Y. Reports*, *p.* 629.)

II. The objection that since the act of 1859, making the office of assessor a salaried office, was enacted, that a charge for assessing invalidates the assessment in which it is included, has been urged before the court in numerous cases, and the court has invariably refused to vacate an assessment upon that ground.

It is now urged, in this and in other similar cases before this court, with such pertinacity, that a brief review of the former decisions may not be improper.

Immediately after the law of 1859 (chapter 302) was enacted, providing that the assessors should thereafter receive an annual salary of two thousand dollars, the existing board of assessors applied to the late Hon. G. C. Bronson, then counsel to the corporation, for instructions as to the propriety of continuing to include a charge for assessing in the assessments made by them. His reply is filed in their office, instructing them that, while the law of 1859 fixed their compensation at two thousand dollars, it was not improper to include in each assessment a charge for assessing sufficient to reimburse the city treasury for the expense incurred in making the assessment.

This opinion of the learned judge seems to be founded upon a sound construction of the act of 1813 (*p.* 1191, *Valentine's Laws*), which confers upon the corporate authorities power to make a just and equitable assessment of the expense of local improvements among the owners of property intended to be benefited thereby.

The cost of apportioning the expenses of the improvement is part of the cost of the work.

The salaries of the assessors and all the expenses of maintaining their office are incurred by the city for the *sole* purpose of making assessments of the expenses of local improvements; their services are bestowed, not for the benefit of the city at large, but for the sole benefit of persons whose property is intended to be benefited by the local improvements for which assessments are laid.

The act of 1859 was not intended, and did not in any way affect the powers granted to the corporation by the act of 1813. It was intended only to fix the compensation of the assessors at two thousand dollars, but the power of the corporation to assess the expense of local improvements remains unaffected.

This view of the same question, arising under a statute precisely lik that under consideration, was maintained by the general term of the Second District, where the court, per EMOTT, J., says: That the law providing a salary to be paid to the assessors intsead of fees " does not make it illegal for the common council to charge or exact compensation from the individuals benefited by any local improvement for the services of their officers in effecting it." (*MS. case of People ex rel. Hunt agt. City of Brooklyn.*

Pursuant to the instructions of Mr. Bronson, the assessors continued to include a charge for assessing in each assessment.

The validity of this charge was first questioned in case of Bryon McCahill, who brought proceedings under the act of 1858, to vacate an assessment for paving Fort-ninth street,

from Lexington to Third avenue, alleging the invalidity of the charge for assessing. The question was fully argued before Hon. DANIEL P. INGRAHAM,, and the learned judge refused to vacate the assessment.

The case was argued on September 22, 1863.

This decision was the precedent upon which the board of assessors based their subsequent action, continuing to make the charge until the decision in the *Tappen case*, December 27, 1867.

The next case in which a charge for assessing was drawn in question, was *Beekman's case*, reported in special term (19 *Abbott* 244); and at general term (1 *Abbott, N. S., p.* 449).

In this case, it was not contended that it was illegal to make any charge for assessing; but it was contended that the proofs in the case established that the assessors had charged more than the cost of making the assessments (*vide Anderson's point IV.*, 19 *Abbott, p.* 247). The decision of Mr. Justice SUTHERLAND was, merely that the point was well taken, and the charge for assessing in that case was illegal, because it was proven to be in excess of the amount required to reimburse the city the cost of assessing.

The general term affirmed the order, vacating the assessment upon other grounds, viz.: upon the ground that only two of the assessors acted in making the assessment (*vide opinion* LEONARD, J., *Abbott, N. S., p.* 439).

The next case in which this validity of the charge was drawn in question, was the case of Tappen's petition, heard by INGRAHAM, J., at special term. In his opinion, the learned justice held that, since the change of method of compensating assessors, the charge for assessing was improper, but in view of the relatively small amount of the charge, and the disastrous consequences that must ensue from a decision which would, in effect, vacate every assessment laid by the city since 1859, for an error effecting the

Matter of Frederick D. Tappen.

assessments only to the amount of two cents on one hundred, he declined to vacate.

His decision was filed in December, 1867; since that time no such charge has been included in any assessment.

The next case was that of John W. Lewis and others, who petitioned to vacate an assessment for repaving West street, alleging, among other things, the invalidity of the charge for assessing.

This matter was heard before BARNARD, J., at special term, and the assessment was sustained, although the point as to the invalidity of any charge for assessing was strenuously urged. Upon appeal to the general term, the decision of Justice BARNARD was affirmed. Justice INGRAHAM, delivering the opinion of the court says: "The allowance of two per cent. for making the assessment is no longer a legal charge. I have heretofore expressed this opinion, that, as the amount was very small, I did not consider it advisable to vacate an assessment in all other respects valid. (*Matter of Lewis* agt. *the Mayor*, 35 *How.*, 162.)

The next case was of W. G. Wood and others, petitioners, to vacate assessment for paving Third avenue.

This case was heard at general term, and the assessment set aside upon the ground other than that of the illegality of the charge for assessing, viz.: upon the grounds that work had been done in paving gutters and removing gutter stones, which was not included in the contract, and that a portion of the work had been rejected by the Croton department.

In the case of Thomas W. Ogden, the general term of December last refused to hear argument upon the point, Mr. Justice INGRAHAM, then announcing that the court had determined not to vacate assessments upon that ground, unless the assessors should continue to make the charge for assessing, after his decision in the Tappen case, in December, 1867.

It will thus be seen that while the court, since the Tappen case, heard by INGRAMAM, J., have held the charge to be

illegal, they have, at special and general term, declined to avoid assessments, upon that ground, holding the maxim "*de minimis non curat lex*," sufficient to justify them in subjecting the individual petitioner to an inconsiderable private wrong, rather than, by their decision, to inflict an almost measureless public disaster.

(*a.*) The court, at special term, in Tappen case, *per* INGRAHAM, J., and at special term in the Lewis case, having refused to vacate assessments upon the ground of invalidity of charges for assessing, made at precisely the same rate *per cent.* as in the case at bar, and amounting, in the aggregate, to a larger sum than is charged herein, it is submitted that, upon the principle "*stare decisis,*" the Court will not now disturb those decisions.

III. The second point urged by petitioner is based upon an objection to the act of 1861, chap. 308, upon the ground that it is a "local" act, embracing more than one subject; that also a subject not expressed in its title, and therefore in contravention of section 16, article 3, of the constitution.

(*a.*) The act in question is not a "local" act. "*Burrill's Law Dictionary, vol.* 2 *p.* 163, 164 defines "local" as follows: "Relating to place, belonging or confined to a particular place, distinguished from general, or personal, or transitory."

The statute in question relates to contracts by the mayor, Aldermen, &c.; it is not in any respect limited in its action to any particular place, does not relate to the territory occupied by the corporation; its subject is the regulation of contracts made by the mayor, &c., (an artificial person within the State), with other persons.

The statute affects every person who may contract with the mayor, &c., and is as truly a general statute as any contained within the statute-books.

In the *Revised Statutes, vol.* 1 *p.* 343, *Edmond's Edition.* is found an article: "Of county treasurer," in which it is provided "that the chamberlain of the City and County of

Matter of Frederick D. Tappen.

New York shall be the county treasurer thereof." Will the petitioner contend that this statute, "of county treasurer," is "local," relating to the City of New York, and containing matters not expressed in its title, because the above cited provision is therein contained?

(*b.*) But if the act in question be a "local" act, its title is sufficient expression of its contents within the principles defined in *Sharp* agt. *The Mayor*, 18 *How..* 97 (INGRAHAM, J.); and *Outwater* agt. *The Mayor*, 18 *How.*, 572; *The Sun Mutual Insurance Co.* agt. *The Mayor*, 4 *Selden*, 252.

The subject mentioned in the title of the act is, "contracts with the Mayor, &c.;" upon the contracts made in accordance with the act, the assessments, which the board of revision confirm, are based; and, in confirming these assessments, the board necessarily passes upon all questions in relation to the legality and validity of contracts made pursuant to the act.

The board is, therefore, a component part of the machinery provided by the statute to make contracts in a certain method, and then by examination and revision to enforce conformity to that method, and guard the citizens from liability accruing otherwise than in the method prescribed.

IV. The objection that the assessment-roll fails to show the true nature of the owner and occupant of many of the lots assessed, is not well taken.

The act of 1840 (*chap.* 3-6, *Valentine's Laws*, *p.* 1243), while it provides that the assessment-rolls shall state the names of the owner or owners, and occupant or occupants of the lots assessed, further provides how the names of such owners, &c., shall be ascertained, viz.: "By inquiring of the collector of taxes of the ward in which the property assessed is situate."

The legislature have thus prescribed the sources of information to which the persons who make out 'the assessment-rolls shall apply, and they are to take the facts shown by the tax books as true.

The obvious intent of the legislature was that the last assessed person should be deemed the owner for the purpose of assessment. (*Vide Laws af* 1841, *chap*, 230, § 3. 210; *Valentine's Laws, p.* 1250.)

If, therefore, the assessment lists have been made from the rolls in the hands of the collector of taxes, and bear the same names as owners and occupants, the statute has been fully complied with, and the inacuracies are no ground of objection. (*Paillet* agt. *Youngs*, 4 *Sand. Rep., p.* 56.)

In this case the court says: "The collector of taxes of the ward and the person who collected the taxes of the ward, are then the sources from which the assessors or surveyors are to derive their information as to the ownership of the property assessed. They are referred to in their official capacities, as public officers, deriving their knowledge from the tax book placed in their hands. The surveyors, or persons who make out the assessment lists, being thus directed to these sources of information as to the particular fact of ownership, are to take the fact, as shown by the tax books, to be true. They would not be justified, perhaps, in acting on their own private knowledge, nor are they required to look to otheir sources of information. The intent of the legislature, we think, obviously was, that the person last assessed as owner, or who last paid taxes as owner, should be deemed, for the purposeses of the assessment, as the true owner."

It is admitted herein that the assessment lists bear the same names as owners that are shown upon the tax-rolls of the year next preceding the confirmation thereof.

The objection must therefore fall.

(*a.*) Nothing is shown as to the occupancy of the assessed property and *non constat*, but that the names given, other than those of owners, are the names of occupants.

V. The fourth objection urged, that no ordinance was passed requiring the *owners* to fill sunken lots previous to

the performance of the work by the corporation, is predi- cated upon a mistaken view of the law.

(*a.*) The authority of the corporation to fill lots and assess the expense is not derived from chapter 49, Laws of 1824.

Section 175, chapter 86, Laws of 1813, confers upon the corporation power to fill lots and assess the owners thereof, without any previous ordinance requiring the owner to do it.

Section 267, of the same act, confers power to make such by-laws and ordinances as they shall from time to time deem necessary and proper, for the filling up of any grounds, &c., that may be sunken, &c., or which they deem proper to fill up, &c.

Section 269 empowers the corporation to estimate and assess the expense of such filling up in the same manner as is directed with respect to the paving or regulating of the public streets of said city.

Sections 270 and 271 further provide that the corporation, when they deem it expedient for the more speedy execution of the work, may proceed to perform the work at their own expense, on account of the persons that may be assessed therefor; that they may levy the expense on the property of the proprietors, or occupants, or recover the same by action of debt, and that the same shall be a lien upon the property, which may be enforced as a mortgage.

If at any time doubt existed as to whether the act of 1813 authorized the corporate authorities to fill lots and assess the expense, that doubt is removed by the act of 1824, capter 19:

That act, in its preamble and first section, enacts that the two hundred and seventieth, and two hundred and seventy-first sections of the act of 1813, shall apply to all and every of the laws, ordinances, orders, and directions which the corporation are authorized to make, and provides that assessments for such expenses may be made as provided in the

one hundred and seventy-fifth section of the act of 1813, and every remedy and proceeding had for the collection of such assessments, which is provided by the act of April 12, 1816, entitled "*An act for the more effectual collection of taxes and assessments.*"

(*b.*) The ordinances which enact that certain sunken lots shall be filled are, *ex vi termini,* the most imperative requisition that the owners thereof shall fill them; and the provision in section two, chapter 49, Laws of 1824, that the corporation, when they deem it expedient, may proceed to fill such lots *forthwith,* upon the enactment of such an ordinance, destroys the utility, and obviates the necessity of any requirement by the corporation that the owners, &c., shall fill the same, more formal than the enactment of the ordinance directing the work to be done.

VI. The objection to the form of the ordinance initiating the proceedings for resetting curb and gutter in Fortieth street, between Ninth and Tenth avenues (assessment No. 6 in the petition), that it is invalid, because it commands the work to be done "*where necessary,*" has been held to be well taken, when urged against work of a different character. and kind from that for which the assessment was laid, upon the ground that the common council can not delegate a discretion to the the executive officer to decide how much work shall be done, and consequently how large the assessment shall be.

It is respectfully submitted that in the particular improvement under consideration, viz.: the resetting of curb and gutter—1st, no other form of ordinance was possible to be adopted; 2d, no discretion affecting the amount to be assessed for the work done upon the individual pieces of property benefited, was thereby confided to the executive officer.—

—The work. to be done was the resetting of curb and gutter in the particular spots where it had become displaced, upon Fortieth street, between Ninth and Tenth

avenues. Each particular lot, in front of which the work is done, is liable to assessment for the number of feet reset, and for no more.

It would be obviously improper to direct the resetting of all the curb and gutter between the points named, for some of it might not need resetting, as is presumable from the language of the ordinance.

The ordinance confers no discretion, but it is to be read as directing the resetting of curb " wherever the same is displaced," *i. e.*, " where necessary."

VII. To the sixth objection urged against the assessment No. 7, we reply in the language of LEONARD, J.—

" When the law authorizes the expenses of such an improvement to be assessed in a particular manner, it is an undue assumption of power to incur the expense, and attempt its collection from the tax-payers at large ; and I mnst doubt the obligation or validity of any ordinance or contract which has for its object the release of that source of payment which alone is authorized by the law that permits the improvement." (*Rhinelander* agt. *The Mayor*, 24 *How.* 304.)

VIII. If the appeal be not dismissed, the order of the special term should be affirmed.

*By the court*—BARNALD, J.: I am not satisfied that the charge for making assessments is illegal.

The common council are authorized to assess the costs of a local improvement upon the property benefited thereby. The fees of the officers who do this duty are a part of the costs of the work.

These officers are now paid by a salary from the city treasury. It is just that the expenses of an office created for, and having no other duty to perform than to assess the costs of these improvements upon the lands which ought to pay therefor, should be paid as the other expenses are paid.

It appears that the salaries of these officers are over seven thousand dollars per year ; but it does not appear what fur-

ther expense is incurred by the city in relation to the office.

It does not therefore appear that any greater sum has been charged than the actual expense to the city in making the assessments. It has been repeatedly held by this court that an assessment will not be set aside because the charge for assessing is contained in it.

No confirmation was needed by the commom council.

By Chapter 308 of the laws of 1866, a board of revision was created, whose duty it was made to confirm such assessments.

This law is not void as infringing the constitution of the state.

The subject of the act is expressed sufficiently in its title. It is " An act relative to contract." The assessment is based upon a contract, and this board of revision was created to do what the common council had done before the passage of the act. Their action was necessary to give validity to the contract, made for a street improvement.

The various means by which the legislature reach a result are not necessary to be set out in the title of an act; only the subject on which legislation is proposed.

No valid objection can be maintained by reason of the manner in which the names of the owner and occupants are stated in the assessment.

The law provides (chap. 826 laws, of 1840), the person to whom the surveyor and assessors having charge of an assessment shall go for their information.

It was to " the collector of taxes of the previous year," of the ward in which the lands were situated. The names of the owners and occupants are the same in this assessment as upon previous year's tax list. This is all the law requires (*Paillet* agt. *Young*, 4 *Sand. Rep.* 56).

The common council had the power by ordinance to direct the filling the sunken lots, and in case it deemed necessary, to do the same at the expense of the owners, forthwith, upon

Matter of Frederick D. Tappen.

the passage of the same (2 *Rev. Stat.* 1813, *p.* 446 § 270, 271; *Laws* 1824, *p.* 39, § 2).

It was the duty of the common council, to assess the cost of the improvment upon the property benefited, and not cast this burden upon the tax payers at large.

I am of opinion that the order at special term should be affirmed, with costs.