# JANUARY TERM, 1868, AT LANSING.

## Martin Ryerson et al. v. William S. Utley.

*Constitutional Law: State Internal improvement: Taxation: Misappropriation by Public officers: Title to Legislative acts.* The constitution of this state—*Art. 14,* §*9*—provides that " The State shall not be a party to, or interested in any work of internal improvement, nor engaged in carrying on any such work except in the expenditure of grants to the state of lands or other property." The Legislature of 1857 passed an act " to provide for the improvement of navigation over the sand flats of the Muskegon River" and appropriated $50,000 from the internal improvement fund of the state to secure the free navigation of said river. The act also provides that no money shall be drawn from the general fund in the Treasury of the State for such improvement, and that the state should not be responsible or held liable for any contract growing out of such improvement, except as by that act provided.

Under this act a contract was let for constructing the contemplated work for the sum of $50,000, and it was duly performed and accepted. The Auditor-General, however, refused to draw his warrant for the amount, for the alleged reason that the internal improvement fund was exhausted; and the Legislature of 1867 passed an " act to provide for the preservation of the Muskegon River improvement, and for other purposes; a principal purpose of which was the levying and collecting of tolls on the commerce of Muskegon River, sufficient to pay the $50,000 and interest thereon within five years. *Held,*

1. That this legislation is unconstitutional, both in substance and form. And that the case is not varied in its legal aspects by the fact that the original contract provided for the payment in a constitutional mode, and the unconstitutional substitution is made afterward.

2. That the refusal of the state officers to apply a fund to the purpose to which it is devoted by law constitutes no misappropriation of the fund. But assuming that there had been an actual misappropriation, still this legislation could not be sustained. It is the essence of all taxation that it should compel the discharge of the burden by those upon whom it rests; and if the state has misappropriated this fund the obligation to restore it rests upon the whole state, and cannot be justly charged upon the commerce of Muskegon.

RYERSON v. UTLEY.

3. That said act is unconstitutional for the reason that it conflicts with the provision of the constitution "that no law shall embrace more than one object, which shall be expressed in its title."— *Const. Art. 4 § 20.* The only object mentioned in the title to this act is the preservation of the Muskegon River improvement; for which purpose the act authorizes tolls to be levied and expended. The payment of the said claim is in no way connected with this object; and the title to the act does not indicate that it covered provisions under which a large sum was to be collected and disbursed to pay for the original construction of the work. The words "other purposes" in the title, can have no force whatever under the constitutional provision.

*Heard October 23d, 1867. Decided January 7th, 1868.*

Appeal in Chancery from Muskegon Circuit.

The bill in this cause was filed to restrain the collection by a commissioner, of a special contribution towards the payment of a claim against the state for certain improvements on the Muskegon River.

The facts were admitted by stipulation. A decree was rendered in accordance with the prayer of the bill, and a perpetual injunction granted.

The case involves the constitutionality of the act of 1857 — *Sess. L. No.* 147 — and that of 1867 — *Sess. L. No.* 56.

*G. V. N. Lothrop,* and *D. Darwin Hughes,* for complainant.

1. The act of 1867, p. 82, § 10, is void under the provision of the state constitution, which declares that, "the state shall not be a party to, or interested in any work of internal improvement, nor engage in carrying on any such work, except in the expenditure of grants to the state of land or other property." — *Const. Art.* 14, § 9.

This was designed, both to keep the state from running into debt, and also to keep the state free from enterprises which are not well carried on by public officers.

It is true the state, in terms, avoids liability for this debt, in this act. Yet this is only colorable. It by law levies a tax, or contribution, collectible by its own officer, payable by him into the state treasury, and thence paid on the warrant of the Auditor General to the extinguishment of the debt. In effect, then, it becomes a party to this

work.   It is within the clear scope of the provision above cited.

2.   The law embraces more than one object; and the matter now in question is not at all indicated by the title of the act.

The title is "An Act to provide for the preservation of the Muskegon River improvement, and for other purposes."

In fact, the principal purpose of the act is to provide for the payment of the Beard claim.   This is substantially distinct from, and having no necessary connection with the care and preservation of the work.   It, therefore, is in violation of this clause of the constitution, as expounded by this court.—13 *Mich.* 494.

The recent decision of the Court of Appeals in New York on the act transferring the license power to the Police Commissioners is to same effect.   See also 7 *Ind.* 506, 681; 9 *Ind.* 363, 380; 11 *Id.* 199; 14 *Id.* 239; 2 *Minn.* 330.

The claim of Beard, if not a debt of the state, is a debt of the internal improvement fund.   That fund, and that only, is liable for it.   The state can not directly assume payment of it.   Nor can it lawfully impose the payment of it on any locality or upon any individuals.   Yet the latter is precisely what this act proposes to do.

It imposes the payment of this debt on those who navigate the Muskegon River.   And it seizes their property, and, without their consent, applies it to the payment of this claim.

It is not a toll or tax to maintain the navigable condition of the river.   It does not profess to be that.— 8 *Mich.* 279; 4 *N. Y.* 423.

It is simply a forced contribution from the complainants to pay the debt of the internal improvement fund, if the claim is, in law, any debt at all.

Such a taking is, of course, unlawful.   If it were a taking for the public use, it would be an unlawful exercise of the right of eminent domain.   But, as a taking to pay

a debt due an individual, it is wholly indefensible. — 8 *Mich·* 291; 2 *Pet.* 657; 39 *Penn. St. R.* 73; 4 *Hill,* 144.

And, if possible, this objection is strengthened by the statement of the answer, that the internal improvement fund has proper resources of its own.

*George Gray,* for defendant.

1. The Law of 1857, p. 394, making the appropriation for the improvement is not repugnant to section 9, article 14, of the constitution; because it provides only for the expenditure of a grant or grants of land and other property to the state.

The internal improvement fund, from which the appropriation is made, is formed and acquired wholly from grants to the state; and this fund is not, and was not at the time of the passage of said last mentioned act, or at any time since, either exhausted, or without ample means to meet this expenditure.

The appropriation in question made by said act is the expenditure of a grant to the State, and is not, therefore, a violation, in spirit or letter, of Sec. 9, Art. 14 of the state constitution; consequently the act No. 56 of the laws of 1867 cannot, for that reason, be deemed unconstitutional.

2. The last named act of 1867, is not in violation of sec. 20, Art. 4, of the constitution.

The general subject and the object of the law is but one, and that is fairly indicated by the title. The language may not be such as the counsel for the complainants would have used to express that subject, purpose, or object, which reaches to the past as well as to the future; but yet it cannot be said to mislead.

The constitutional provision must receive a reasonable construction with a view to give it effect, and not too rigorous and technical a construction. The purpose of the constitutional provision was that neither the members of the Legislature, nor the public, should be misled by the title;

not that the title should embody all the distinct provisions of the bill.— 13 *Mich.* 481; 8 *N. Y.* 241; 2 *Met. Ky.* 219; 3 *Id.* 566; 19 *N. Y.* 116; *Sedgw. Stat. and Const. Law, p.* 567, *et seq.*

3. Before a law can be pronounced unconstitutional, its incompatibility with the constitution must be clear, and every possible presumption, not clearly inconsistent with the language and subject matter, is to be made in favor of the constitutionality of State legislation.— 6 *Cranch,* 87; 1 *Mich.* 295; 4 *Id.* 224; 5 *Id.* 251; 8 *Id.* 320; 13 *Id.* 127; 15 *Id.* 322.

4. It cannot be said that this is an improvement of private property, or for private benefit, and not for public purposes. On the contrary, it is claimed that the Muskegon river is a public highway, and it is admitted that the improvement in question was, and is, a valuable and permanent improvement: one absolutely necessary to the navigation of the river. It is, therefore, needed by the public; the public had a right to make it; and each person who enjoys it should bear his share of the burden, and pay his proportionate part of the cost and expense. 8 *Mich.* 291, *et seq.*

The right in the State to take and exact tolls is not doubted; and the perfect justice and uniformity of the mode of assessing and collecting the tolls in the present instance cannot seriously be questioned. The complainants do not pretend that the operations of the law or the acts of the defendant, are unequal or wanting in uniformity and generality. *Sess. Laws of* 1867, *p.* 79, *Act No.* 56; 8 *Mich.* 278.

COOLEY CH. J.

The constitution of this state— *Art.* 14, § 9—provides that "The state shall not be a party to or interested in any work of internal improvement, nor engaged in carrying on any such work, except in the expenditure of grants to the state of land or other property." The legislature of 1857

passed "An Act to provide for the improvement of naviga-
tion over the sand flats of the Muskegon river"—*Laws*
*1857, p.* 394—which act appropriated $50,000 from the in-
ternal improvement fund of the state for constructing such
levees and other works between Muskegon Lake and Maple
River, as might be necessary to secure the free navigation
of Muskegon River.    The last section of the act provided
that no money should be drawn from the general fund in
the treasury of the state for such improvement, and that
the state should not be responsible or held liable for any
contract growing out of such improvement, except as by
that act provided.    This section probably had no other
purpose than to evidence the legislative intention to keep
strictly within the provisions of the constitution, and not to
engage the state in this improvement, except to the extent
of the appropriation from the internal improvement fund;
which fund was the proceeds of lands donated to the state
for works of this character.

Under this act a contract was let to John A. Brooks for
constructing the contemplated work, for the sum of $50,000;
and it was actually constructed by William Beard, his as-
signee, and duly accepted.    The Auditor General, however,
refused to draw his warrant for the amount, for the alleged
reason that the internal improvement fund was exhausted;
and the legislature of 1867 passed an act "to provide for
the preservation of the Muskegon River improvement, and
for other purposes;" a principal purpose of which appears to
be, the levying and collecting of tolls on the commerce of
Muskegon River, sufficient to pay the $50,000 and interest
thereon, within five years.    The question before us is,
whether this act is constitutional.

If the state, when it entered into the contract with
Brooks had stipulated that the contract price should be paid
from tolls levied on commerce, or from any species of taxa-
tion, the unconstitutionality of the contract would have
been too plain to admit of argument.    The case would

plainly be one where the state had engaged in a work of public improvement, to be paid for in some other mode than by the expenditure of grants to the state. But certainly the case is not varied in its legal aspects by the fact that the original contract provided for the payment in a constitutional mode, and the unconstitutional substitution is made afterwards. The constitution does not permit the state either to contract a debt for a public improvement, or to expend in its construction anything but the grants which it has received for the purpose; and any legislation which attempts any other expenditure, must be directly within the constitutional inhibition, and therefore void.

It is said, however, on the part of the defendant, that the internal improvement fund in fact was not exhausted; and the argument is, that the refusal of the state to apply the fund according to the terms of the original act, amounts to a misappropriation, and the state in consequence became equitably bound to satisfy Beard's claim in some other manner, and that it has passed the law in question as a means of discharging this just state obligation.

But surely the refusal of the state officers to apply a fund to the purpose to which it is devoted by law, constitutes no misappropriation of the fund. There is nothing before us from which we are warranted in inferring that any portion of this fund has been transferred to any other fund, or misapplied in any way. The defendant says, and the complainants admit, that the fund is not exhausted; and if this is so — of which we have no knowledge except from these pleadings — then it is clear that no legal foundation exists for providing payment from any other source. The power of the state, and the duty of its officers in the premises, is limited by the constitution to the expenditure of that fund; and they can not make an obligation which rests upon that fund exclusively, a lawful debt against the state, or against any particular portion of the state.

RYERSON v. UTLEY.

But assuming that there had been an actual misappropriation, and that the moneys which should have satisfied the Beard claim had been made use of by the state for general purposes, it still seems to us impossible to suggest any constitutional ground on which to sustain this legislation.    The control of the state in regard to taxation is certainly very great, but it is by no means unlimited, and it can not be exercised in an arbitrary manner, nor without regard to those principles of justice and equality on which it is based.    It is of the essence of all taxation that it should compel the discharge of the burden by those upon whom it rests; and if the state should attempt to compel any single county by taxation to pay the salaries of the state officers, or the expenses of the legislature, no one would for a moment doubt that while the act was arbitrary, unjust and tyranical, it was also unconstitutional.    But in the present case, if the state has misappropriated the internal improvement fund, the obligation to restore it rests upon the whole state; and it can no more be justly charged upon the commerce of Muskegon than upon the commerce of Detroit or Saginaw.    Had the state constructed the improvement with its own means, or on its own credit, as it might have done, had no constitutional provision forbid, there would be a strong equity in favor of compelling the commerce benefited by it to pay for its construction; but when the general government furnishes the means of payment, and the state appropriates them to other purposes, so that every part of the state has the benefit of the misappropriation, then to hold that it may be made a charge upon some one part of the state to the relief of all the rest, would be to say that no restraints whatever rest upon the power of the legislature to select the objects of taxation in any case: a doctrine which certainly can not be sound under any free government.

What we have said upon this subject we confine exclusively to the case before us, where the state is seeking to

pay for a work of internal improvement by tolls levied upon the commerce passing through it, while, according to the pleadings, it already has a fund devoted to the purpose, unless it has been misappropriated. We have no occasion or desire to inquire into, consider or question the power of the state to control and manage this work, or to levy tolls for any other purpose than to pay for construction.

When so fatal an objection to the subject matter of an act appears upon its face, it seems almost superfluous to mention objections of form; but there is also a formal objection here which is equally fatal. The constitution provides—*Art.* 4 § 20—that no law shall embrace more than one object, which shall be expressed in its title. We have heretofore had occasion to consider this section, and have said of it that it ought to be construed reasonably, and not in so narrow and technical a sense as unnecessarily to embarrass legislation.—*People v. Mahaney,* 13 *Mich.* 494. But the only object mentioned in the title to this act is the preservation of the Muskegon River Improvement; for which purpose the act authorizes tolls to be levied and expended. The payment of Beard's claim is in no way connected with this object; and the title to the act would apprise neither the Legislature nor the public, that it covered provisions under which a large sum was to be collected and disbursed to pay for the original construction of the work. The words, "other purposes," in the title can have no force whatever under the constitutional provision which has been quoted.— *Fishkill v. Fishkill and Beekman Plank Road Company,* 22 *Barb.* 642.

Several cases were cited on the part of the defense which it was supposed would be precedents for sustaining this law. In the case of *The Sun Mutual Insurance Co. v. The Mayor etc., of New York,* 8 *N. Y.* 241, it was held, substantially as we held in *The People v. Mahaney,* that if the title covered the object of the act, the degree of particularity with

which it should be set out was for the Legislature to determine. To the same effect are many other cases, among which may be cited — *Morford v. Unger,* 8 *Iowa,* 82; *Whiting v. Mount Pleasant,* 11 *Id.* 482; *Indiana Central R. R. v. Potts,* 7 *Ind.* 681; *State v. Bowers,* 14 *Id.* 195; *State v. County Judge,* 2 *Iowa,* 280; *Brewster v. Syracuse,* 19 *N. Y.* 116. In *Phillips v. The Covington and Cincinnati Bridge Co.* 2 *Met. Ky.* 219, the question was whether the title to the act was not open to objection for duplicity. In *Johnson v. Higgins,* 3 *Met. Ky.* 566, it was held that the constitutional provision should receive a reasonable construction, and any provision of the act directly or indirectly relating to the subject expressed in the title, and having a natural connection therewith, and not foreign thereto, should be deemed embraced by it. We approve of the principle of this decision as thus stated; but are unable to perceive any natural connection which the payment of the Beard claim has with the preservation of the Muskegon improvement. In *Brewster v. Syracuse,* 19 *N. Y.* 116, an act entitled "An Act for the relief of James Ley & Son" was held to properly embrace, under its title, provisions for the levy and collection of a tax in the city of Syracuse, and the payment of the same to the parties named in the title to compensate them for losses in the performance of a contract made with the city. All the provisions of the act were germane to the purpose specified in the title, while leading features in the one before us are wholly foreign to it.

It is very likely that the title to this act might have been made sufficiently comprehensive to embrace all the purposes of the act; the objection is that it was not made so. In *Mewherter v. Price,* 11 *Ind.* 201, an act entitled "An Act concerning promissory notes and bills of exchange," it was held could not be made constitutionally to provide that other contracts, as well as notes and bills, should be negotiable. In *Gillespie v. State,* 9 *Ind.* 383, it was held that an act entitled "An Act to limit the number of grand

jurors, and to point out the mode of their selection, defining their jurisdiction, and repealing all laws inconsistent therewith," could not be made to embrace a section providing that under an indictment for a felony the petit jury might convict of a misdemeanor. In *Igoe v. State*, 14 *Ind.* 239, it was held that a section requiring foreign insurance companies to appoint an agent in the state upon whom process might be served, was foreign to the object specified in the title to an act "To amend an act for the incorporation of insurance companies, defining their powers and prescribing their duties," because, as the court say, the reading of this title at once induces the conclusion that the various provisions of the act relate alone to companies to be incorporated within the state; in other words, to the incorporation, the powers and the duties of domestic insurance companies, and nothing else. In like manner, we say of the title before us, that its reading at once induces the conclusion that the various provisions of the act relate alone to the preservation of the improvement; and the act itself must, therefore, be confined to that object. As we do not understand the complainants to ask any relief against the tolls levied for that purpose, we think the court below was right in granting the prayer of the bill, and its decree must be affirmed, with costs.

CAMPBELL and CHRISTIANCY JJ. concurred.

GRAVES J. did not sit—the case having been argued before he came upon the bench.