ANNA HIGH WILLIAMS, Appellant, v. ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY.

*Division One, March 31, 1911.*

1. **APPELLATE JURISDICTION: Verdict for $3000: New Trial Granted: Appeal.** Where the verdict, in a suit for damages for personal injuries, was for $3000, and the defendant filed a motion for a new trial, which was sustained, and plaintiff appeals, the Supreme Court does not, because of "the amount in dispute," have jurisdiction of the appeal, either under the Act of 1909 or under the prior acts. The amount in dispute is $3000.

2. ————: **Constitutional Question: Raised in Motion for New Trial.** If a constitutional question was lodged in the case for the first time in the motion for a new trial, and in the light of the allegations of the petition and the instructions given that was the earliest practical time at which it could have been raised, the Supreme Court has jurisdiction of the appeal.

3. **THEORY OF TRIAL: Indicated by Instruction: On Appeal.** Whatever may be the terms of plaintiff's petition, if by her instruction asked and given she planted her case for negligence upon defendant's failure to comply with a certain statute, she cannot on appeal depart from that theory of her right to recover; and if the statute is invalid the trial court cannot

be convicted of error for granting to defendant a new trial on the ground that plaintiff was not entitled to recover.

4. **INVALID STATUTE: Insufficient Title: Section 7844, R. S. 1909.** No veiled language in the title to an act meets the constitutional requirement that the subject of the act must be clearly expressed in its title. The language should be clear, and as an index finger point to a single subject-matter and matters germane thereto. The title to the Factory Act of April 20, 1891, now Sec. 7844, R. S. 1909, was, "An Act relating to manufacturing, mechanical, mercantile and other establishments and places, and the employment, safety, health and work hours of employees;" and the body of the act provided that "all platforms . . . in and around all railroad . . . freight houses . . . shall be so placed and arranged as to insure, as far as possible, the safety of employees from injury." *Held*, that the subject-matter of the act is not clearly expressed in the title. There is nothing in the title to indicate that in the body of the act might be expected language concerning railroads, railroad property or railroad employees.

5. ————: ————: ————: **Other Establishments and Places: Ejusdem Generis.** Nor do the words "and other establishments and places," found in the title to said act, aid its failure to refer to railroads. At most those words can be held to refer to only establishments and places of similar kind to those mentioned. They must be altogether ignored and as of no legal significance, or else they must, under the doctrine of *ejusdem generis*, be held to apply to establishments and places subsidiary to the manufacturing, mechanical and mercantile establishments mentioned.

6. **GRANTING NEW TRIAL: Bad Ground.** If the trial court assign a bad reason for granting a new trial, yet if there be a good reason for such action, the order will not be disturbed on appeal. If the reason granted by the trial court was that plaintiff is not entitled to recover, and on appeal it is clear that by her instruction plaintiff planted her case solely on an invalid statute, the order granting a new trial will not be disturbed.

7. **NEGLIGENCE: Statutory: Statute Not Pleaded.** It is not necessary for a petition basing plaintiff's right to recover on statutory negligence, to plead the statute violated. All that is necessary is to state facts sufficient to bring the cause within the terms of the statute.

8. ————: **Based on Void Statute: No Right to Recover.** An unconstitutional act is no law at all. So that if plaintiff bases her action for negligence upon a violation of an invalid statute, and recovers, it is proper for the trial court to sustain a motion for a new trial on the ground that she is not entitled to recover.

9. ————: **Notice Required by Statute: No Notice: No Recovery.** Even if the statute were valid, yet as it requires a notice to the company to be given by a State inspector, directing the distance from the cars a freight platform must be placed, and only then makes a "failure to make such alterations" within thirty days "a violation of the act," there can be no recovery, under the statute, for an injury to a switchman on a car passing the platform, unless such notice was given thirty days prior to the injury. The statute does not attempt to fix the distance between a car and the platform, but empowers the inspector to determine that distance, and contemplates that platforms will remain *in statu quo* until he gives notice to make the alterations, and without such notice there cannot be said to be any violation of the act.

Appeal from Jackson Circuit Court.—*Hon. John G. Park,* Judge.

AFFIRMED.

*A. F. Smith, Boyle & Howell* and *Guthrie, Gamble & Street* for appellant.

(1) The defendant was guilty of negligence in maintaining its platform dangerously close to the track in question, so as to endanger the safety of employees necessarily and properly working alongside the same, unless it was necessary for defendant to maintain its platform in such proximity. Murphy v. Railroad, 115 Mo. 111; Charlton v. Railroad, 200 Mo. 437; Railroad v. Davis, 92 Ala. 300; Railroad v. Stevens, 189 Ill. 226; Kerst v. Railroad, 110 Ia. 32; Railroad v. Michaels, 57 Kas. 476; R. S. 1909, sec. 7844. (2) There was no substantial necessity for maintaining the platform dangerously close to the line of the rail. It is a mere matter of convenience. Convenience does not justify imperiling human life. (3) The servant did not assume this risk. The danger was not necessarily inherent in the business; was due to the master's careless disregard for the safety of the employees, in the interest of mere convenience, and the servant does not

assume the risks of the master's negligence. Pauck v. D. B. Co., 159 Mo. 477; Phippin v. Railroad, 199 Mo. 347; Charlton v. Railroad, 200 Mo. 413; Brady v. Railroad, 206 Mo. 509. (4) As far as the acts of the deceased are not established by the evidence, the jury may presume that his acts were those of a reasonably prudent man under the circumstances. Goff v. Transit Co., 199 Mo. 706; Higgins v. Railroad, 197 Mo. 317. (5) Contributory negligence is an affirmative defense to be established, in the absence of its disclosure as a matter of law by proof of the plaintiff, by affirmative proof on the part of the defendant. In the absence of proof in this case affirmatively disclosing negligence on the part of the deceased, this defense must fail. Charlton v. Railroad, 200 Mo. 413. It is not contributory negligence, as a matter of law, to work between cars in motion. Brady v. Railroad, 206 Mo. 509; Hollenbeck v. Railroad, 141 Mo. 110. It is for the jury to determine how far a prudent man, engrossed with other matters demanding his attention, would bear in mind a danger alongside the track, of which he had more or less previous knowledge. Graney v. St. Louis, 141 Mo. 180; Barr v. City, 105 Mo. 557; Keist v. Railroad, 110 Ia. 37; Fitzgerald v. Railroad, 88 Hun 360; Railroad v. Cleveland, 92 Ill. App. 311; Crouch v. Railroad, 23 S. C. 499; Charlton v. Railroad, 200 Mo. 440; Hawley v. Railroad, 133 Fed. 153; Railroad v. Michaels, 57 Kas. 476; Johnson v. Railroad, 43 Minn. 53.

*Thomas R. Morrow, Cyrus Crane, James P. Gilmore, S. W. Sawyer* and *John H. Lathrop* for respondent.

(1) Plaintiff is bound by the theory adopted in the trial of this case. Hof v. Railroad, 213 Mo. 470; King v. Railroad, 130 Mo. App. 371; Brick Co. v. Railroad, 213 Mo. 726; Hesselbach v. St. Louis, 179 Mo.

505; Hamilton v. Railroad, 123 Mo. App. 619; Glaser v. Rothschild, 106 Mo. App. 418; Jones v. Habberman, 94 Mo. App. 1. (2) Section 7844, R. S. 1909, is in part unconstitutional. Witzman v. Railroad, 131 Mo. 612; State v. Persinger, 76 Mo. 347; Board v. Snow, 45 Kas. 332; St. Louis v. Tiefel, 42 Mo. 578; Shepherd v. Helmers, 23 Kas. 504; St. Louis v. Laughlin, 49 Mo. 559; County Commissioners v. Smelting Co., 32 Pac. 717; State v. Fulks, 207 Mo. 26; State v. Tea Company, 171 Mo. 634; State v. Jackson County, 102 Mo. 531; Cooley on Constitutional Limitations (7 Ed.), p. 207; Fishkill v. Plank Road Co., 22 Barb. 634; Ryerson v. Utley, 16 Mich. 269. (3) There was no negligence shown on the part of defendant. Coin v. Lounge Co., 222 Mo. 488; Brands v. Car Co., 213 Mo. 698; Chrismer v. Telephone Co., 194 Mo. 189; Minnier v. Railroad, 167 Mo. 112; Steinhauser v. Spraul, 127 Mo. 562; Bohn v. Railroad, 106 Mo. 429; Eliot v. Railroad, 204 Mo. 1; Graney v. Railroad, 157 Mo. 683; Brewing Assn. v. Talbot, 141 Mo. 683; Hysell v. Swift, 78 Mo. App. 47; Fuchs v. St. Louis, 167 Mo. 620. (4) Deceased was guilty of negligence. Eliot v. Railroad, 204 Mo. 1; Sparks v. Railroad, 31 Mo. App. 111; Jennings v. Railroad, 7 Wash. 275; Purcell v. Tenant, 187 Mo. 276; Hurst v. Railroad, 163 Mo. 309; Moore v. Railroad, 146 Mo. 572; Pohlmann v. Car Co., 123 Mo. App. 219; Spiva v. Coal Co., 88 Mo. 68; Huggart v. Railroad, 134 Mo. 673; Hayden v. Railroad, 124 Mo. 566; McGahan v. Transit Co., 201 Mo. 500; Schmidt v. Railroad, 191 Mo. 215; Higgins v. Railroad, 197 Mo. 317. (5) The danger, if any, from the platform, was one of the risks ordinarily incident to the operation of railroads and must have been assumed by the deceased. Jackson v. Railroad, 104 Mo. 448; McIntosh v. Railroad, 58 Mo. App. 281; Harrington v. Railroad, 104 Mo. App. 663; Purcell v. Tenant Shoe Co., 187 Mo. 276; Tuttle v. Railroad, 122 U. S. 189; Randall v. Railroad, 109 U. S. 478. (6) The court erred

in instructing the jury on the measure of damages. Hinds v. Marshall, 22 Mo. App. 208; Gessley v. Railroad, 26 Mo. App. 156.

GRAVES, P. J.—Plaintiff is the widow of Ellis T. High, and as such, in the name of Anna High, brought suit against defendant in the circuit court of Jackson county for the alleged negligent killing of her husband, the said Ellis T. High. After the institution of the suit, she intermarried with one Williams, and took the necessary steps to further prosecute the suit in the name she thus assumed by the intermarriage.

By her petition she charges that the death of her said husband was occasioned by reason of the fact that defendant had negligently constructed an unloading platform too close to the track upon which the freight cars were switched to be unloaded. The petition is long but the alleged negligence of defendant can be gathered from the following language contained therein:

"That said platform and the said arrangements in and around such railroad yard and freight house were so located, placed and arranged as to endanger the safety of employees in this, that said platform was as aforesaid so located and placed, with reference to said track and cars operated thereon, as to leave only about eight inches of space between said platform and the corners and sides of said cars, whereas said platform should have been so located, placed and arranged in order to insure so far as possible the safety of employees from injury or accident as to leave between said platform and said cars a space sufficient for the safe passage of employees between the edge of said platform and such cars, when such platform was necessary for the safety of employees in the performance of their duties as was at times necessary, and as was at the time and place of the injury aforesaid; that there were no conditions preventing the

location of said platform so as to be at such sufficient distance from such cars, and it was practicable to so place, arrange and locate said platform; and such platform was so placed, arranged and located as same in fact was, only for the convenience of the defendant in loading and unloading freight at said platform; that such negligent failure of the defendant to properly arrange, place and locate such platform directly contributed to cause the death of said High.''

The amount sought to be recovered was $5000.

Defendant's answer is, (1) a general denial, (2) a plea of contributory negligence, (3) a plea of assumption of risks, and (4) a plea charging that the cause of action, if any, had vested in two minor children of the deceased by a former wife.

Reply was a general denial.

The trial, *nisi*, resulted in a verdict, by the concurrence of ten jurors, for plaintiff in the sum of $3000. Defendant thereupon filed its motion for new trial and in arrest of judgment. The court sustained such motion for new trial for the reason, as assigned, that plaintiff was not entitled to recover. From this order sustaining the motion for new trial plaintiff has appealed.

The evidence, so far as required, will be detailed and reviewed in connection with the points made.

I. At first impression we were doubtful as to the jurisdiction of this court. Upon no theory, does the ''amount in dispute'' give us jurisdiction. The petition and the amount claimed therein, if such were to govern, would not give us jurisdiction under the Act of 1909 increasing the jurisdiction of the Courts of Appeals. In this case and the facts thereof the amount in dispute, as contemplated by the Constitution, is the amount of the verdict which was set aside by the trial court. Even in cases where the amount claimed by plaintiff in the petition is such as to con-

fer jurisdiction upon this court when plaintiff has been defeated in the action below, yet if plaintiff recovers below an amount less than the jurisdictional limit for an appeal to this court, and the verdict for such amount is set aside on the motion of defendant, the appeal must be taken to the Court of Appeals having territorial jurisdiction of the cause; and not to this court. In other words, the amount of the verdict set aside fixes the jurisdiction.

In Culbertson v. Young, 156 Mo. 261, this court said: "This court has no jurisdiction of this appeal. The utmost that is involved in this appeal is the amount of the verdict rendered in the circuit court. Appellant in his brief asks 'that the judgment of the circuit court in setting aside the verdict of the jury and granting a new trial be reversed and the cause remanded with directions to enter up a judgment on the verdict.' Plaintiff sought no new trial in the circuit court and his claim for the original amount sued for is not here at this time. He seeks only to have a judgment entered on his verdict for $783.25. If he should succeed that would end the case. The propriety of setting aside that verdict is the only matter involved in this his special appeal, and this court has no jurisdiction, as it is less than twenty-five hundred dollars. On the other hand if the circuit court did not err in granting the new trial, no final judgment has been rendered in that court from which an appeal can be taken. Roselle v. Farmers' Bank, 119 Mo. 84, is not authority for the claim that this court has jurisdiction. This cause is ordered re-transferred to the Kansas City Court of Appeals."

In that case the amount sued for was $7180, of which sum we then had jurisdiction. The verdict was for only $783.25, which verdict was set aside upon motion of the defendant. Appeal was granted to the Kansas City Court of Appeals, but that court trans-

ferred it to this court. Our conclusions are indicated by the quotation, supra. So that in the case at bar, even without the aid of the Act of 1907, we would have to hold that so far as the amount in dispute is concerned, this court would be without jurisdiction.

Our jurisdiction, however, hinges upon a constitutional question lodged for the first time in the motion for new trial. We were first impressed with the idea that the question was not timely raised, but upon a more thorough reading of the petition, and the instructions given, we are satisfied that the point as to the unconstitutionality of the statute involved was made at the earliest practical time, and hence will proceed to the determination of the merits of the case.

II.  At the close of all the evidence the defendant asked a peremptory instruction to find for defendant. This was refused, and defendant requested no further instruction. This demurrer to all the testimony we will discuss later.

Reverting to the constitutional question mentioned in our first paragraph, it should be noted that the first and principal instruction for the plaintiff invoked that part of the Factory Act of April 20, 1891, Laws 1891, l. c. 162, now section 7844, Revised Statutes 1909. This section of the present statute was section 20 of the said Act of 1891. In the Revised Statutes of 1899, said section 20 of said act was section 6448. No change has been made therein since its first enactment. It thus reads: ''All platforms, passageways, steps, flag offices and other structures or arrangements in and around all railroad yards, switches, roundhouses, switch offices, freight houses and passenger depots, shall be located, placed and arranged so as to insure, as far as possible, the safety of employees from injury or accident.''

Plaintiff's first and principal instruction thus reads: ''The statute law of this State requires that

all platforms, passageways, steps, flag offices and other structures or arrangements in and around all railroad yards, switches, roundhouses, switch offices, freight houses and passenger depots shall be located placed and arranged so as to insure, as far as possible, the safety of employees from injury or accident; and the failure, if any, of a corporation operating a railroad to so locate, place and arrange any platform in and around a railroad yard or freight house, as far as reasonably practicable so to do, would constitute negligence. And if you find that on or before the first and second days of June, 1904, plaintiff was the wife of Ellis T. High, and that said High was fatally injured on or about such time while in the employ of the defendant as a switchman, and that such injury occurred in the State of Missouri as the direct result of the negligent failure (if any) of the defendant to comply with such statute law, in locating, placing and arranging its platform in dangerous proximity to the line of passage of the body of freight cars (if you so find), and that the body of said High, while engaged in the proper course of his duties (if he was) was caused to come out from between the ends of cars against said platform (if you so find) and that negligence (if any) on the part of said Ellis T. High did not directly contribute to such injury, and that at the time of the death of said Ellis T. High he was contributing to the support of the plaintiff, and might be reasonably expected to continue to do so, then your verdict should be for the plaintiff.''

It therefore appears that whatever may be the terms of her petition, the plaintiff by this instruction planted her recovery squarely upon this statute. This is the only instruction which outlines her theory of her right to recover. Other instructions given go to subsidiary matters, such as the definition of ''ordinary care,'' contributory negligence, measure of damages and presumptions to be indulged.

Such being her theory below, it cannot be departed from upon appeal. [Degonia v. Railroad, 224 Mo. l. c. 588 *et seq.*; Hof v. Transit Co., 213 Mo. l. c. 470; Taylor & Sons Brick Co. v. Railroad, 213 Mo. l. c. 726 *et seq.*]

Defendant challenges the constitutionality of this law, for the reason, among others, that the subject-matter thereof is not within the purview of the title of the act, and not clearly expressed in such title. The title of the original act thus reads: "An act relating to manufacturing, mechanical, mercantile and other establishments and places, and the employment, safety, health and work hours of employees."

Counsel further urge that more than one subject is covered by the Act of 1891, and that for this as well as the previously stated reason, this section of the statute is unconstitutional and void under the provisions of section 28 of article 4 of the Constitution of the State. This contention we think well founded. The subject-matter of section 20 of the original act is not clearly expressed in the title to such act. Not only so, but there is more than one subject embodied in the act.

Going to the first matter above mentioned, no one reading the title to the original act would for a moment think or even imagine that railroads or railroad properties or railroad employees were being considered or legislated upon in the act. The constitutional provision, excluding the excepted classes of legislation, reads: "No bill . . . shall contain more than one subject, which shall be *clearly expressed* in its title."

The requirement that the subject of a bill "shall be clearly expressed in the title" is just as mandatory and just as binding upon the courts, as that portion of the section which says that "no bill . . . shall contain more than one subject. . . ."

In State v. Burgdoerfer, 107 Mo. l. c. 30, it is said: "The title must express the subject of an act in such terms that the members of the General Assembly and the people may not be left in doubt as to what matter is treated of."

So, too, in State v. Great Western Coffee and Tea Co., 171 Mo. l. c. 643, Fox, J., after quoting the above from the Burgdoerfer case, adds: "And it is elsewhere said very aptly 'that to be clearly expressed' certainly does not mean something that is dubious and therefore is not clearly expressed."

In Kansas City v. Payne, 71 Mo. l. c. 162, the following language from Judge Cooley is quoted with approval by this court: "The Constitution has made the title the conclusive index to the legislative intent. It is no answer to say that the title might have been more comprehensive if, in fact, the Legislature has not seen fit to so make it."

The test of a sufficient title to a bill is well expressed by Sherwood, J., in St. Louis v. Weitzel, 130 Mo. l. c. 616, whereat he says: "The evident object of the provision of the organic law relative to the title of an act was to have the title, like a guide board, indicate the general contents of the bill, and contain but one general subject which might be expressed in a few or a greater number of words. If those words only constitute one general subject; if they do not mislead as to what the bill contains; if they are not designed as a cover to vicious and incongruous legislation, then the title can stand on its own merits, is an honest title and does not impinge on constitutional prohibitions."

There is no clear expression in this title to the bill under consideration indicating that in the body of the act might be expected language concerning railroads, railroad property or railroad employees. No veiled language in a title meets the constitutional requirement. The language should be clear, and as an

index finger point to a single subject-matter and matters germane thereto. As to the subject-matter contained in section 20 of the original act, the language of the title does not so do.

Throughout the history of this State, railroads, railroad property and railroad employees have been treated as separate subjects. Legislatively speaking, they have been assigned to classes of their own. Manufacturing, mechanical and mercantile establishments have not been associated with such classes by the lawmaking power. The relation of master and servant as to liability for negligence is different in railroad corporations from the liability in case of negligence committed by manufacturing, mechanical and mercantile establishments. Inspection laws are different as pertaining to the two classes. In such laws railroads have been treated as a class to itself, and inspections made thereof by a board having peculiar authority for that purpose. It is useless to go over the line of statutes in this State which clearly show that matters pertaining to railroads and their employees, have been treated as subjects within and of themselves.

Nor do the words "and other establishments and places" found in the title aid the law in question, as seems to be contended by the plaintiff. To these words in the title, the doctrine of "*ejusdem generis*" is the most that can be applied.

These words at best can only be held to cover "establishments and places" of a similar kind to those named. The rule as to such expressions is well summarized in 26 Am and Eng. Ency. Law, p. 584, thus: "The words 'and for other purposes' frequently suffixed to the title of a statute imply purposes not named in the title, and therefore are generally rejected as being without force or effect, and insufficient to indicate matters not otherwise indicated by the title. But the phrase may be given meaning when employed, not to indicate other subjects than that expressed in the

title, but in connection with a subsidiary clause in the title defining the ends sought to be reached. . . . So, also, the words 'and so forth' or '*et cetera*' will not be given meanings to extend the scope of the title, and nothing which the act might not embrace without them can be brought in with their aid. But the *ejusdem generis* rule may be applied where the words are merely used in summarizing the details affected by the act, since in such case they do not seek to cover a subject different from that stated in the title.''

Even if we apply the rule *ejusdem generis,* it cannot be said that section 20 of the original Act of 1891 covers a subject-matter similar to the three specific classes named in the title. And if these words are to stand and are not to be construed by the rule *ejusdem generis* then more than one subject is contained in the title.

Touching in a way the question here involved, in the early case of St. Louis v. Tiefel, 42 Mo. l. c. 592, WAGNER, J., said: "It is very plain, however, that the use of the words 'other purposes,' which have been extensively used in the title to acts to cover any and every thing, whether connected with the main purpose indicated by the title or not, can no longer be of any avail. [Town of Fishkill v. Plank Road Co., 22 Barb. 642; Ryerson v. Utley, 16 Mich. 269.]''

Along the same line is St. Louis v. Laughlin, 49 Mo. l. c. 564, whereat it is said: "In the present case, the charter specifically enumerates the classes of persons intended to be taxed, and the sweeping words 'all other business, trades, avocations or professions,' we do not think can be made to include persons not of the same generic character or class. In specifying and enumerating the trades and professions to be taxed, it was intended to limit the taxation to them or to persons engaged in similar trades or occupations. If it had been designed to tax lawyers, which, as the agreed case finds, number over three hundred in this city, it

is unaccountable that they should have been omitted in the enumeration, whilst other professions comprehending but a few persons are expressly. referred to and selected. To give the words 'all other business, trades, avocations or professions' the meaning contended for would give the city the power of taxation by license over nearly every laborer. I am of the opinion that the Legislature had no such intention in view.''

In Shepherd v. Helmers, 23 Kas. 504, the Kansas court says: "The words 'for other purposes,' it is conceded, do not add anything to the expression of the title and may be considered as surplusage and as nugatory.''

The Colorado Court of Appeals takes the same view. In County Commissioners v. Smelting Company, 3 Colo. App. 225, that court said: "The. act is entitled 'An act to amend section 29, . . . and to repeal sections 30, 31, 32 and 33 thereof, and for other purposes.' The last clause, 'and for other purposes,' may first be disposed of. It is, in such connection, meaningless, of no legal significance, conveys no idea of any legislative intention whatever. It is said by Judge Cooley in his excellent work on Constitutional Limitations (5 Ed.), p. 175: 'The words, "and for other purposes," must be laid out of consideration. They express nothing and amount to nothing as a compliance with this constitutional requirement. Nothing which the act could not embrace without them can be brought in by their aid.' [See Ryerson v. Utley, 16 Mich. 269; Town of Fishkill v. Plank Road Co., 22 Barb. 634; St. Louis v. Tiefel, 42 Mo. 578.]''

So viewing this section 20 of the original act from all standpoints, the least which could be said is that such section does not fall within the purview of the title and is therefore void and in violation of the constitutional provision mentioned.

Plaintiffs appeal must therefore fail for this reason, if not for the reason assigned by the court in granting the new trial, which latter reason we will hereafter discuss.

Plaintiff by the instruction quoted planted her case squarely upon the statute. If there be no such statute, then the instruction was error, and such error is sufficient to sustain the order granting a new trial. Even if the trial court assign a bad reason for granting a new trial, yet if there be a good reason for such action, the order will not be disturbed by this court. The giving of this instruction was assigned as error in the motion for new trial. We will discuss next the reason assigned by the court, *nisi,* for the action taken in granting the new trial.

III. Should the trial court have held that the plaintiff failed to make a case? We think so. The question may be approached from several standpoints. In the first place, if the petition is one charging statutory negligence, as plaintiff has construed it by the instructions asked and given, then the action of the trial court in granting the new trial and the reason assigned by the court for such action are proper on the theory that there is no such law. An unconstitutional act is no law at all. So that if the action is founded upon statutory negligence, and the statute fails, the trial court was right in saying that plaintiff was not entitled to recover. A reading of the petition discloses that no statute is mentioned therein, but facts are pleaded (with one possible exception as to notice to be noted later) which would authorize a recovery under the statute. It is not necessary for a petition to state the statute violated. All that is necessary is to state facts sufficient to bring the cause within the terms of the statute. Such has been the ruling of this court in several recent cases. [Taylor

v. Railroad, 207 Mo. 1. c. 500-501; Campbell v. Railroad, 121 Mo. 1. c. 348.]

So also has the Kansas City Court of Appeals so ruled. [Walker Bros. v. Railroad, 68 Mo. App. 1. c. 474.]

In the case at bar the plaintiff treated her case as one brought under the statute. The trial below was upon that theory and such theory can not now be abandoned. So that if the law is unconstitutional the circuit court was right in declaring that plaintiff had shown no right to recover.

IV. But the court's reason assigned was right from another and further standpoint. Let it be granted that the statute was constitutional, and yet the evidence fails to disclose an actionable violation thereof by defendant. There is no evidence in this record that any notice was given the defendant to make alterations or changes in its platform.

Section 16·of the Act of 1891, in so far as applicable, reads: "Whenever the commissioner of labor, or assistant inspector, finds that . . . the platforms, passageways, and other arrangements around, in and about any railroad yard or switch be such as to probably. lead to injury or accident to those employed in, around or about any such establishment or place, the inspector or assistant inspector shall at once notify the person or persons in charge of such establishment or place to make the alterations or additions necessary within thirty days; and if such alterations or additions be not made within thirty days from the date of such notice, or within such time as said alterations could be made with proper diligence, then such failure to make such alterations shall be deemed a violation of this act."

This section must be construed with the provisions of section 20, supra. Section 20 is indefinite as to just how these platforms must be erected or placed,

but it is made definite when a State inspector looks over the situation and directs just how they shall be erected and located.   This direction comes by force of section 16.   Platforms located close to the unloading track may add to the dangers of the switchmen in putting in cars to be unloaded, but platforms located at a distance therefrom might add to the dangers of accident of other railroad employees engaged in unloading and loading freight.   The railroad company owes a duty to all of its employees, and cannot so construct its platforms to the advantage of one class and to the detriment of another class of its employees. This Act of 1891 leaves the delicate duty of protecting all classes of employees to the supervising eye of an inspector appointed by the State.   When the inspector notifies the party and then the party fails to so construct and place its platform in conformity to the direction given, then and only then has there been a violation of this law.   Until there has been a violation of the law, there has been no statutory negligence.

The question is a new one in this State, but practically the same point has been decided by the Supreme Court of Massachusetts, in the case of Foley v. Pettee Machine Works, 149 Mass. 1. c. 297.   That court there says: "The plaintiff claims that the defendant is liable under the Pub. Stats., c. 104, sec. 22.   But by the just construction of this chapter a person or corporation cannot be said to be guilty of a violation of section 13, so as to be liable to a criminal prosecution, or to an action by an employee, until notice has been given to him by an inspector, as required in section 22."

The language of that court, supra, was used with reference to the laws of that State concerning the inspection of buildings.   Section 13, mentioned by the court, reads: "The belting, shafting, gearing, and drums of all factories, when so placed as to be, in the opinion of the inspectors mentioned in section nine of

chapter one hundred and three, dangerous to persons employed therein while engaged in their ordinary duties, shall be as far as practicable securely guarded. No machinery, other than steam engines, in a factory, shall be cleaned while running, if objected to in writing by one of said inspectors. All factories shall be well ventilated and kept clean.''

Section 22, also mentioned by the court, reads: ''Any person, firm, or corporation, being the owner, lessee, or occupant of any manufacturing establishment, or owning or controlling the use of any building or room mentioned in section 20, shall, for the violation of any provision of section thirteen, fourteen, fifteen, nineteen, twenty or twenty-one, forfeit to the use of the Commonwealth not less than fifty nor more than five hundred dollars; and shall also be liable for all damages suffered by any employee by reason of such violation; but no prosecution shall be made by such violation until four weeks after notice in writing by an inspector has been sent by mail to such person, firm, or corporation, of any changes necessary to be made to comply with the provisions of said sections; nor then, if in the meantime such changes have been made in accordance with such notification. Nothing in this section shall be so construed as to prohibit a person injured from bringing an action to recover damages for said injuries.''

In the Foley case the plaintiff sought to recover damages because certain gearing of a machine had not been securely guarded. Under the statutes aforesaid the court held that there was no civil liability until after notice. Our statute points more clearly to notice than does the statute of Massachusetts.

Going to our statute, had the act pointed out definitely how platforms should be constructed, then it might be urged with force that it was not necessary to read the two sections 16 and 20 together. It might be urged that there was a violation of law when the

person failed to construct the platform as pointed out by section 20, and another violation of the law when the person failed after notice to reconstruct the same under section 16. But as the statutes now appear, the one being indefinite and uncertain in its terms, the reasonable construction of the two sections is, that there has been no actionable violation of law until after notice is given under section 16, supra. The whole tenor of the act is that what is a safe platform lies within the judgment of the inspector. So that even if it be conceded that the law is constitutional, the action of the court *nisi* was right.

Suppose in a given case, an inspector should direct that the platform be placed eight inches from the side of the car, as it was in the case at bar, and a switchman was injured by reason of that fact, can it be questioned that the direction of the inspector would not be a valid and absolute defense to an action for damages? We think not. On the other hand, suppose further an inspector directed the platform to be placed five feet from the sides of the car, and by reason of that fact, a car unloader was injured, can it be questioned that the direction of the inspector would not be a valid and absolute defense to a suit for that injury? We think not. To our mind the act contemplates that platforms are to be left *in statu quo* until in the judgment of the inspector a change is ordered. This change must be made only after notice. A failure to make the change after notice is a violation of the statute which is actionable. What is here said does not apply to many of the provisions of this lengthy act, because there are many things therein not covered by section 16, supra. Platforms of railway freight depots are covered, however.

With these views, it becomes unnecessary to discuss the case from the viewpoint of the evidence. Nor shall we discuss the fact as to whether or not plaintiff's petition states a cause of action at common law.

The case was not so tried below. Upon the present record, the action of the trial court was right, and its judgment is affirmed. All concur, except *Valliant, J.,* absent.